LINDA RISS, Appellant, v. CITY OF NEW YORK, Respondent.

First Department, March 16, 1967.

*Nathaniel Rothstein* for appellant.

*Edward O. Howard* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondent.

STEUER, J. P. It would serve no purpose to iterate the facts leading up to the tragic incident which resulted in the horrible injuries suffered by this plaintiff. Sufficient is set out in the dissenting opinion.

The question is whether plaintiff raised an issue calling for submission to a jury as to whether the defendant, through its Police Department, was negligent. The claimed negligence is the failure to provide personal police protection to plaintiff. It must be conceded that, absent special circumstances, there is no duty resting on a municipality or other governmental body to provide police protection to any particular person on his request (*Murrain* v. *Wilson Line,* 270 App. Div. 372, affd. 296 N. Y. 845). The noted case, heavily relied on by plaintiff and the dissenting opinion, of *Schuster* v. *City of New York* (5 N Y 2d 75), does not change this. It merely fixes one of the special circumstances in which a failure to supply such protection may be actionable. Such circumstance is where the police know that the person seeking protection has informed on a dangerous criminal and has been threatened on account thereof. This was held to constitute a special circumstance not only because unusual danger could readily be seen to be imminent but also because a failure to provide protection under such circumstances would discourage citizens from giving information to the police and hence decrease the efficiency of law enforcement. No such element is here present.

Admittedly this is not the only set of circumstances in which the failure to supply protection would be a breach of duty owed by the municipality. And we do not wish to be understood as invoking any such limitation. Undoubtedly there would be liability if a police officer witnessed an assault and failed to go to the protection of the person threatened; and also where the authorities have recognized a present, immediate and serious danger to the extent of supplying protection and thereafter abandon the person protected before the threat of imminent danger has abated (*Isereau* v. *Stone,* 207 Misc. 941).

Here the evidence shows that the police were told of the actions of a disappointed suitor who, it is true, made extravagant threats. In addition, they were told of certain incidents which might be construed as activating those threats, though actual proof of the perpetration of those acts by the one threatening was lacking. They were confronted with the fact that the person accused was a lawyer in good standing, and that when the plaintiff made a charge against him in court it was withdrawn on the hearing. It must be common knowledge that unfavored swains are not infrequently tempted to relieve their frustrations by

predictions of dire results to the object of their attentions; and that the timorous make frequent applications for protection for this, as well as a variety of other reasons, real or imagined. It would not only be impracticable but impossible to protect against all these contingencies.

Here, events proved the police to be wrong. The suitor was either so depraved or demented that he carried out his threats in a manner that can only evoke revulsion to himself and the greatest pity for his victim. But this is not to say that there was negligence in failing to foresee these consequences. Otherwise, in every case of reported threat the police would have to determine the probability of injury at their peril. It is submitted that the facts brought out on this trial do not show the presence of such imminent danger that extraordinary police activity was so indicated that the failure to take it can be deemed unreasonable conduct. The balancing factors, plus the fact that complaints continued over a considerable period without active implementation by dangerous conduct, negate the contention that the failure to afford personal protection in excess of that accorded to members of the community generally was negligence. Something in addition by way of proof of an immediate danger would have to be shown.

Plaintiff also complains of prejudicial treatment by the Trial Judge. We agree that certain rulings, and particularly the manner in which they were made, did not add to the appearance of a fair trial. But as the complaint was dismissed, no prejudice could have resulted. As to exclusions of evidence, we have not been shown, by offer of proof or otherwise, that what was required to make out a case was excluded.

The dismissal of the complaint should be affirmed.

McNALLY, J. (concurring). I concur in the result. The gist of plaintiff's claim is that defendant was negligent in refusing to arrest the threatener, thereby failing to prevent the allegedly foreseeable assault of the plaintiff. *Schuster* v. *City of New York* (5 N Y 2d 75) is inapplicable since there the defendant was alleged to be negligent in withdrawing and failing to afford protection of the deceased after he had supplied information leading to the arrest of a dangerous fugitive from justice. On this record there was no legal basis for an arrest prior to the alleged assault. Moreover, plaintiff did not seek protection, except as an incident of the arrest and detention of the threatener.

I would also affirm under constraint of *Steitz* v. *City of Beacon* (295 N. Y. 51, 56) on the ground that there is no civil remedy to individuals for alleged neglect in the performance of the public duty of police protection.

CAPOZZOLI, J. (dissenting). It is practically impossible, in a brief summary of the evidence, to be able to give a complete recital of the many incidents which gave this plaintiff genuine cause to fear for her safety. Suffice it to say that, in reading this record, one cannot help but conclude that, for about 10 months, this plaintiff was abused, threatened, attacked and attempts were also made to frame her as a violator of the narcotics laws, all chargeable to one, Burton Pugach. This was due to her refusal to go out with him, despite his persistent demands. Although the police were fully informed as to what was taking place, she was left completely alone to protect herself, except for one occasion when the police did escort her home from the station house. Despite her repeated requests to the police for protection, none was given. As late as June 14, 1959, while her engagement party was in progress at her home, the final threatening telephone call was made to her by Pugach, who told her that it was her last chance. She immediately 'phoned the police station, which was familiar with her difficulty, for assistance, nothing was done. On the next morning lye was thrown into her face, as a result of which she lost the sight of one eye, the partial loss of sight in the other and suffered severe facial scars.

The city agrees that "we must assume that the plaintiff's testimony is true, and * * * she be credited with the benefit of every reasonable inference to be drawn therefrom" but argues that her complaint was properly dismissed at the end of the entire case under the law. As against this contention the plaintiff contends that the case should have been allowed to go to the jury and that the Judge committed error in refusing to have the jury pass upon it.

It is true that, independent of sovereign immunity, a municipality is not liable for failure to supply general police protection. (*Motyka* v. *City of Amsterdam,* 15 N Y 2d 134.) But, are we dealing with a situation where there was a failure to supply general police protection, or is it a situation where the circumstances brought home to the police, who were fully familiar with this case, were such as to impose upon the police the duty of complying with the request of the plaintiff?

Until the case of *Schuster* v. *City of New York* (5 N Y 2d 75) it was very doubtful as to whether a cause of action could be urged against a municipality for failure to supply police protection. In the latter case the issue presented was whether a municipality was "under any duty to exercise reasonable care for the protection of a person in Schuster's situation" (p. 80). The court did make it clear that its decision in *Schuster* (*supra*) did not mean that there was created an "obligation enforcible in

the courts to exercise the police powers of government for the protection of every member of the general public'' (p. 81). Therefore, in order for this plaintiff to recover she must demonstrate that her case comes within the principle of law established in the *Schuster* case.

It is true that, in that case, Schuster had informed against a notorious criminal, who was at large and, in fact, caused his arrest. In the case at bar it should be noted that, because of the continuous threats made against this plaintiff, she informed against the one whom she believed to be responsible for these threats, viz: Pugach. In fact, she also informed the police that it must have been he who had narcotic drugs sent to her at her home.

In the case of *Canosa* v. *City of Mt. Vernon* (N. Y. L. J., Feb. 18, 1965, p. 17, col. 6) there was presented a somewhat similar situation as is involved in the case at bar. An action was commenced against the City of Mt. Vernon by the estate of the decedent wife for the failure of the police to furnish protection to her from her husband, although she had requested such protection and the police were fully informed of the existing circumstances. In denying the defendant's motion to dismiss the complaint, Mr. Justice DILLON, in part, said: '' The court can see no significant difference between this case and Schuster v. City of New York (5 N Y 2d 75). * * * Of course there are some differences in the facts of the two cases. In the Schuster case the decedent, acting as a public-spirited citizen, gave the police information leading to the arrest of a criminal of national reputation * * * here, the decedent went to the police, not as a person interested in abstract law enforcement, but as a woman justifiably fearful of her own life. * * * This court cannot see why an informer should be entitled to more police protection than a threatened victim, or why the failure to furnish such protection should not be as actionable in one case as in the other.''

I, too, find it difficult to distinguish the case at bar from the *Schuster* case. It seems to me that, while the facts are somewhat dissimilar the principle of law applicable to both is the same. (Also, see, *Isereau* v. *Stone,* 207 Misc. 941, revd. in part on other grounds 3 A D 2d 243.)

Of course, prior to the enactment of section 8 of the Court of Claims Act, this plaintiff would have been completely without a remedy in law. The latter provides as follows: '' The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in

accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ''.

In construing this section the Court of Appeals in Bernardine v. City of New York (294 N. Y. 361, 365) said: '' On the waiver by the State of its own sovereign dispensation, that extension naturally was at an end and thus we were brought all the way round to a point where the civil divisions of the state are answerable equally with individuals and private corporations for wrongs of officers and employees,—even if no separate statute sanctions that enlarged liability in a given instance.'' Again, in the Schuster case (p. 83) the court said: '' This waiver of governmental immunity removed the bar that previously prevented actions based on negligence of the police and made possible recoveries in the cases which have been cited. In one sense all of those causes of action grew out of the waiver of governmental immunity. But they were not created by waiver of governmental immunity, but by the common law, which ' is the legal embodiment of practical sense. It is a comprehensive enumeration of principles sufficiently elastic to meet the social development of the people. Its guiding star has always been the rule of right and wrong, and in this country its principles demonstrate that there is in fact, as well as in theory, a remedy for all wrongs. The capacity of common law for growth and adaptation to new conditions is one of its most admirable features.' (11 Am. Jur., Common Law, § 2, pp. 154–155.) While governmental immunity remained in effect, this type of court action remained in abeyance. It remained in abeyance not on account of absence of duty on the part of a municipality to the injured or deceased person, but for the reason that where the factual basis of the claim was involved in the performance of a governmental function (such as police duty), the State had not permitted itself or its political subdivisions or municipal corporations to be sued.'' Later (p. 86) of the Schuster opinion, the court said: '' The instant action is based on negligence. It is grounded on negligence of the police in the failure to exercise reasonable care for the protection of Schuster after he had received threatening letters ''.

In view of the above, it is my conclusion that the nature and extent of the duty of the police to protect an individual is dependent upon the circumstances of each particular situation and the danger reasonably to be anticipated. Therefore, since the city is liable as is an individual or corporation for wrongful acts of its officers and agents, it was a question of fact for the jury, whether, under the circumstances, the failure of the police to provide protection for the plaintiff was reasonably to be foreseen

as exposing this plaintiff to danger. The failure of the trial court to allow this case to go to the jury was error and I, therefore, vote to reverse and remand for a new trial.

TILZER, J., concurs with STEUER, J. P.; McNALLY, J., concurs in result in opinion; CAPOZZOLI, J., dissents in opinion.

Judgment affirmed, without costs and without disbursements.