OPINION OF THE COURT
Alexander, J.
This action was commenced against the City of New York (City) by Dina Sorichetti, an infant, and her mother, Josephine Sorichetti, to recover damages resulting from injuries inflicted on Dina by her father, Frank Sorichetti. Plaintiffs’ theory of recovery is that the City, through the New York City Police Department, negligently failed to take Frank Sorichetti into custody or otherwise prevent his assault upon his daughter after being informed that he may have violated a Family Court order of protection and that he had threatened to do harm to the infant. Special Term denied a pretrial motion by the City to *464 dismiss the complaint for failure to state a cause of action (95 Mise 2d 451), and the Appellate Division affirmed (70 AD2d 573).
A jury thereafter returned a verdict in plaintiffs’ favor in the amount of $3,000,000 for the infant and $40,000 for the mother. The Appellate Division modified by ordering a new trial on damages unless Dina Sorichetti stipulated to reduce her award to $2,000,000. The infant so stipulated and judgment was entered in the reduced amount. We granted the City’s motion for leave to appeal from the judgment, bringing up for review the prior nonfinal Appellate Division order (CPLR 5501 [a]).
To uphold the award of damages in this case, we must determine whether a special relationship existed between the infant and the municipality by virtue of (1) the issuance of a judicial order of protection directing Frank Sorichetti to refrain from threatening or assaulting his wife and providing that the order constituted authority for a peace officer to arrest a person charged with violating its terms; and (2) the police department’s knowledge of Frank Sorichetti’s history of assaultive and abusive conduct toward his family and his immediate threats of harm to his daughter and its response to Josephine Sorichetti’s pleas for assistance.
Josephine and Frank Sorichetti were married in 1949, and had three children, the youngest being Dina, who was born in 1969. It appears that Frank drank excessively and that the couple’s relationship was quite stormy, with Frank becoming violent and abusive when under the influence of alcohol. In January 1975, Josephine obtained an order of protection in Family Court following a particularly violent incident in which her husband had threatened her and punched her in the chest so forcefully as to send her “flying across the room.” The order recited that Frank was “forbidden to assault, menace, harass, endanger, threaten or act in a disorderly manner toward” Josephine. By June 1975, Frank’s drinking and abusiveness had intensified. Consequently, Josephine moved out of their residence and took her own apartment. Upon her return in early July to obtain her personal belongings, Frank attacked her with a butcher knife, cutting her hand, which required suturing, and threatened to kill her and the children. The police were summoned from the 43rd precinct, but Frank had fled by the time they arrived. A second order of protection was issued by Family Court and a complaint filed in Criminal Court by Josephine. Frank was arrested by detectives from the 43rd precinct, but Josephine subsequently dropped both the Family Court and criminal charges based on Frank’s promise to reform.
*465 Frank’s drinking and violent behavior continued, however, and in September 1975, Josephine served divorce papers on him. Frank became enraged and proceeded to destroy the contents of their apartment. He broke every piece of furniture, cut up clothes belonging to his wife and Dina, threw the food out of the refrigerator and bent every knife and fork. The police from the 43rd precinct were summoned, but they refused to arrest Frank because “he lived there.”
Family Court entered a third order of protection that also ordered Frank Sorichetti to stay away from Josephine’s home. During the ensuing months, Frank continued to harass his wife and daughter, following them in the mornings as they walked to Dina’s school and threatening that they “were Sorichettis” and were going to “die Sorichettis”, and that he was going to “bury them”. Josephine reported these incidents to the 43rd precinct. Additionally, Frank created disturbances at Josephine’s place of employment on a number of occasions with the result that she was discharged. On October 9, 1975, Frank was arrested by officers of the 43rd precinct for driving while intoxicated.
On November 6, 1975, Josephine and Frank appeared in Family Court where the order of protection was made final for one year. Included in the order was a provision granting Frank visitation privileges with his daughter each weekend from 10:00 a.m. Saturday until 6:00 p.m. Sunday. It was agreed that Dina would be picked up and dropped off at the 43rd precinct. As required by Family Court Act § 168, the order also recited that: “[T]he presentation of this Certificate to any Peace Officer shall constitute authority for said Peace Officer to take into custody the person charged with violating the terms of such Order of Protection and bring said person before this Court and otherwise, so far as lies within his power, to aid the Petitioner in securing the protection such Order was intended to afford.”
On the following weekend, Josephine delivered Dina to her husband in front of the 43rd precinct at the appointed time. As he walked away with the child, Frank turned to Josephine and shouted, “You, I’m going to kill you.” Pointing to his daughter, he said, “You see Dina; you better do the sign of the cross before this weekend is up.” He then made the sign of the cross on himself. Josephine understood her husband’s statements and actions to be a death threat, and she immediately entered the police station and reported the incident to the officer at the desk. She showed him the order of protection and reported that her husband had just threatened her and her child. She requested that the officer “pick up Dina and arrest Frank.” She also *466 reported the past history of violence inflicted by Frank. The officer told Josephine that because her husband had not “hurt her bodily — did not touch her” there was nothing the police could do. Josephine then returned home.
At 5:30 p.m. the following day, Sunday, Josephine returned to the station house. She was distraught, agitated and crying. She approached the officer at the front desk and demanded that the police pick up Dina and arrest her husband who was then living with his sister some five minutes from the precinct. She showed the officer the order of protection and related the threats made the previous morning as well as the prior incidents and Frank’s history of drinking and abusive behavior. The officer testified that he told Josephine that if “he didn’t drop her off in a reasonable time, we would send a radio car out.”
The officer referred Josephine to Lieutenant Leon Granello, to whom she detailed the prior events. He dismissed the protective order as “only a piece of paper” that “means nothing” and told Josephine to wait outside until 6:00. At 6:00 p.m., Josephine returned to the Lieutenant who told her, “why don’t you wait a few minutes * * * Maybe he took her to a movie. He’ll be back. Don’t worry about it.” Josephine made several similar requests, but each time was told “to just wait. We’ll just wait.” In the meantime, at about 5:20 or 5:30, Officer John Hobbie arrived at the station house. He recognized Josephine, who by then was hysterical, from prior incidents involving the Sorichettis. Specifically, just a few months previously, on June 28, 1975, Hobbie had intervened in an altercation in which Frank, while intoxicated and being abusive, had tried to pull Dina away from a babysitter, cursing and saying, “if I don’t have her, the mother shouldn’t have her.” Hobbie had taken Frank, Dina and the babysitter to the 43rd precinct, where a decision was made not to let Frank have the child. Frank had started cursing and became loud and abusive. He calmed down somewhat when threatened with removal from the station house, and left when told that the police were holding the child until her mother arrived. In a second incident on October 9, 1975. Officer Hobbie transferred Frank to a hospital for detoxification following Frank’s arrest by officer’s of the 43rd precinct for driving while intoxicated.
After speaking with Josephine on November 9, 1975, Officer Hobbie informed Lieutenant Granello of his prior experiences with Frank. He told the Lieutenant that Sorichetti was a “very violent man” and that Dina was “petrified” of him. Officer Hobbie recommended that a patrol car be sent to Sorichetti’s home. Lieutenant Granello rejected this suggestion, contending *467 initially that no patrol cars were available and later that “not enough time ha[d] gone by.”
At 6:30, Lieutenant Granello suggested that Josephine call home to see if Dina had been dropped off there. She did so and was informed that the child was not there. She continued to plead that the officer take immediate action. The Lieutenant again told Josephine “Let’s just wait”. At 7:00, the Lieutenant told Josephine to leave her phone number and to go home, and that he would call her if Sorichetti showed up. She did as suggested.
At about the same time, Frank Sorichetti’s sister entered her apartment and found him passed out on the floor with an empty whiskey bottle and pill bottle nearby. The woman also found Dina, who was severely injured. Between 6:55 and 7:00 p.m., Sorichetti had attacked the infant repeatedly with a fork, a knife and a screwdriver and had attempted to saw off her leg. Police from the 43rd precinct, responding to a 911 call, arrived within five minutes and rushed the child, who was in a coma, to the hospital. The infant plaintiff was hospitalized for 40 days and remains permanently disabled. Frank Sorichetti was convicted of attempted murder, and is currently serving a prison sentence.
The infant and her mother commenced this action against the City to recover damages for Dina’s injuries and for the mother’s loss of services. Special Term denied a motion to dismiss the complaint, reasoning that the City could be held liable to a third person for breach of a special duty of care that the court found owing to the holder of an order of protection (citing Baker v City of New York, 25 AD2d 770). The court also held that regardless of whether the protective order created a duty vis-á-vis Dina, an issue of fact existed as to whether the police were negligent in failing to protect the infant in light of their knowledge of Frank Sorichetti’s prior threats and acts of violence.
At the close of evidence at trial, the jury was instructed that, pursuant to Family Court Act § 168 (l),[1] the City owed a special *468 duty of protection to Josephine, which ran also to Dina. This duty arose, the court charged, upon presentment of the order of protection to the police along with an allegation that it had been violated. To satisfy this duty of care, the jury was instructed that the police had to act in a reasonable manner in investigating the claimed violation. Apart from the order of protection, the court instructed the jury to consider whether the City breached a duty of care in failing to protect the infant plaintiff in light of its knowledge of Frank Sorichetti’s history and prior conduct.
The jury returned a verdict in plaintiffs’ favor. It found specifically that the City had not breached its duty under the order of protection by its actions of Saturday morning, November 8th; that the City had breached its duty under the order of protection on Sunday evening, November 9th; and that the City had knowledge of Frank Sorichetti’s past history and conduct, and, in light of this knowledge, breached a duty to protect Dina.
A municipality cannot be held liable for injuries resulting from a failure to provide adequate police protection absent a special relationship existing between the municipality and the injured party (De Long v County of Erie, 60 NY2d 296; Weiner v Metropolitan Transp. Auth., 55 NY2d 175; Riss v City of New York, 22 NY2d 579). Indeed, where there is no special relationship, a municipality does not owe a duty to its citizens in the performance of governmental functions, and thus courts will not examine the “reasonableness” of the municipality’s actions (see, eg., O’Connor v City of New York, 58 NY2d 184; Garrett v Holiday Inns, 58 NY2d 253; Florence v Goldberg, 44 NY2d 189). In the context of police protection, a different rule “could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits” (Riss v City of New York, 22 NY2d, at p 582, supra).
In several extraordinary instances, a special relationship has been found which imposes a duty on a municipality to provide reasonable police protection to an individual. For example, in Schuster v City of New York (5 NY2d 75), the City was held liable when a citizen collaborated with the police in the arrest of a dangerous fugitive and was thereafter denied protection after he received death threats, which were successfully carried out. Similarly, in De Long v County of Erie (60 NY2d 296, supra), we imposed a special duty of care on a municipality toward a woman who called 911 for police assistance, was told that assistance would be forthcoming, and in reliance on this assurance exposed herself to danger that resulted in her death.
*469 A key element in each of these cases, as well as in those cases that have found a special duty of reasonable care in the performance of other governmental functions (see, e.g., Garrett v Holiday Inns, 58 NY2d 253, supra; Florence v Goldberg, 44 NY2d 189, supra), is some direct contact between agents of the municipality and the injured party.
In the present case, we hold that a special relationship existed between the City and Dina Sorichetti which arose out of (1) the order of protection; (2) the police department’s knowledge of Frank Sorichetti’s violent history, gained through and verified both by its actual dealings with him, the existence of the order of protection, and its knowledge of the specific situation in which the infant had been placed; (3) its response to Josephine Sorichetti’s pleas for assistance on the day of the assault; and (4) Mrs. Sorichetti’s reasonable expectation of police protection.
In enacting Family Court Act § 168, the Legislature intended to encourage police involvement in domestic matters, an area in which the police traditionally have exhibited a reluctance to intervene (see, e.g., Bruno v Codd, 47 NY2d 582, 590; Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29 A, Family Ct Act § 168, pp 131-132). The statute does not evince a legislative determination that the scope of municipal tort liability attendant upon traditional governmental activities, such as police protection, should be extended to an entire class (see, Riss v City of New York, 22 NY2d, at p 582, supra). By its terms, section 168 provides that a certificate of protection “shall constitute authority” for a peace officer to take into custody one who reasonably appears to have violated the order. As such, it “broadens the circumstances under which a peace officer may take a person into custody beyond those enumerated in Article 140 of the Criminal Procedure Law” (Besharov, Practice Commentary, supra, at p 131). When presented with an order of protection, a police officer is not mandated to make an arrest. Nonetheless, such presentation along with an allegation that the order has been violated, obligates the officer to investigate and take appropriate action.
The issuance of a protective order creates a situation quite unlike that presented in Riss (22 NY2d 579, supra) in several respects. The order evinces a preincident legislative and judicial determination that its holder should be accorded a reasonable degree of protection from a particular individual. It is presumptive evidence that the individual whose conduct is proscribed has already been found by a court to be a dangerous or violent person and that violations of the order’s terms should be treated *470 seriously. Significantly, the class of potential victims to whom a duty to investigate might arise is necessarily limited by the terms of the order.
In an unrelated case that arose after the incident in this case, the New York City Police Department conceded its obligation “to respond to every request for assistance or protection” when presented with an order of protection and an allegation of its violation (Bruno v Codd, 47 NY2d 582, supra).
The fact that an injury occurs because of a violation of an order of protection does not in itself create municipal liability. An arrest may not be warranted in each case, and the failure of the police to take such action will not alone be determinative of the reasonableness of their conduct. But when the police are made aware of a possible violation, they are obligated to respond and investigate, and their actions will be subject to a “reasonableness” review in a negligence action.
As the jury in this case found, the 43rd precinct police had particular knowledge of Frank Sorichetti’s abusiveness, assaultiveness and chronic alcoholism. This knowledge was obtained by direct experience emanating from Sorichetti’s past arrests and the numerous instances in which they had intervened in disturbances caused by Sorichetti. Indeed, on the day of the assault, the precinct’s supervising officer, Lieutenant Granello, was specifically and emphatically informed by one of his officers that Sorichetti was a “very violent man” whose threats should not be taken lightly, and was given information relating to Sorichetti’s past violence. In addition, the certificate of protection represented a judicial affirmation of the seriousness of Sorichetti’s past conduct. These circumstances are significantly different from those in Riss (22 NY2d 579, supra) wherein the assailant, who was unknown to the police, was seemingly a citizen in good standing who, up until the attack, had done nothing to indicate a likelihood that he would make good on his threats. Sorichetti, by contrast, was no mere “unfavored swain” who apparently would be satisfied by voicing hollow “predictions of dire results to the object of [his] attentions” (Riss, 27 AD2d 217, 218-219, affd 22 NY2d 579, supra).
Aside from their awareness of the threatmaker’s violent propensity, a critical factor in the creation of a special duty of protection herein is the police officers’ conduct toward Josephine on the evening of November 9th. When she first approached the front-desk officer at 5:30, Josephine was told that if Sorichetti did not arrive within a reasonable time the police would send a patrol car out. Thereafter, the Lieutenant told Josephine to *471 “wait outside” until 6:00, creating the clear impression that at that time, when Sorichetti’s failure to return would be a viola-, tion of the order of protection, some action would be taken. From this point on, the police repeatedly told Josephine to “wait awhile longer”, never dispelling the notion that they would provide assistance at some reasonable time, until she was finally told at 7:00 to “go home”. Josephine, in her helpless and distraught state, had no alternative but to seek the assistance of the police to assure her daughter’s safety (cf. De Long v County of Erie, 60 NY2d, at p 305, supra). The passage of time was critical inasmuch as the assault did not take place until approximately 6:55.
Thus, in this respect also, this case is unlike Riss (22 NY2d 579, supra) wherein the police made clear to the victim that they would provide no assistance based on the assailant’s threats alone. Under the circumstances presented on this appeal, we hold that a special relationship existed between the police and Josephine and her six-year-old daughter such that the jury could properly consider whether the police conduct satisfied the duty of care owing to Dina.[2]
We reject the City’s contention that there was insufficient evidence to support the jury’s findings that the City breached its duty of care and that the breach was a proximate cause of Dina’s injuries.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye and Titone concur.
Order affirmed, with costs.

. Family Court Act § 168 (1) provides: “In any case in which an order of protection or temporary order of protection has been made by the family court, the clerk of the court shall issue a copy of such order to the petitioner and respondent and to any other person affected by the order. The presentation of a copy of an order of protection or temporary order of protection or a warrant or a certificate of warrant to any peace officer, acting pursuant to his special duties, or police officer shall constitute authority for him to arrest a person charged with violating the terms of such order of protection or temporary order of protection and bring such person before the court and, otherwise, so far as lies within his power, to aid in securing the protection such order was intended to afford”.

. The City points to the trial court’s charge as reversible error. A fair reading of the charge in its entirety, together with the jury’s responses to special interrogatories, makes clear that the jury was properly instructed that the special duty was not to be based on the order of protection in isolation, but rather, in combination with the police’s knowledge of Frank Sorichetti’s violent propensity and their response to the claimed violation of the order in this particular factual situation (see, Davis v Caldwell, 54 NY2d 176).