LAVERNE HARRIS, an Infant, by Her Father and Natural Guardian, CALVIN HARRIS, et al., Appellants, v CITY OF NEW YORK, Respondent, et al., Defendant.

First Department, June 13, 1989

## APPEARANCES OF COUNSEL

*Philip M. Damashek, P. C.,* and *Sally Weinraub, P. C.,* for appellants.

*Alfred Weinstein* of counsel *(Leonard Koerner* and *Leslie Skolnick* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for respondent.

## OPINION OF THE COURT

RUBIN, J.

The facts of this case are stated in the examination before trial of plaintiff Calvin Harris, the father of plaintiff Laverne Harris. On December 29, 1981, Calvin Harris was assaulted and shot in the hand by one Maurice Abisdid. Mr. Abisdid was apparently convinced that Mr. Harris possessed information concerning the whereabouts of Abisdid's son and son's mother, Gwen Nix, Harris's wife's niece. When informed by Mr. Harris that he did not know where Nix and her son might be living, Abisdid pulled a large black gun, put the barrel in Harris's back and threatened that "if I didn't tell him where Gwen and his son was that he was going to kill me and come back for my family." When Harris ran away, Abisdid fired two shots, the second of which struck Harris in the left hand. Harris then flagged down a passing taxi cab and went to Bronx-Lebanon Hospital where he was admitted and remained for "several weeks" according to his affidavit sworn to on June 15, 1987.

During the time he was hospitalized, Calvin Harris main-

tains that, on "several occasions," he was visited by detectives, specifically one Detective Nealon. During his hospitalization, Harris and his wife provided the police with the name, physical description and photograph of his assailant. Two or three days after his release from the hospital, Harris went to the 44th Precinct, where he again spoke with Detective Nealon and also with Detectives Walsh and Pagano. He told them that he feared for his life and his family and asked for protection, a request which he had also made during his stay in the hospital. According to Harris's deposition, "They told me not to worry because they would take care of the matter. They would apprehend the boy, and they would have someone watching my house." Harris alleges that he made several such visits and numerous telephone calls to the precinct house subsequent to his discharge from Bronx-Lebanon Hospital and was repeatedly reassured that his home would be watched and the suspect apprehended.

On February 6, 1982, Maurice Abisdid shot Laverne Harris in the face as she walked into the Harris's apartment after Calvin Harris opened the door for her. The bullet struck Laverne Harris in the face, and she suffered the loss of her right eye. Approximately two more shots were fired as Calvin Harris struggled to close the apartment door against Abisdid and an unidentified accomplice. Six days later, according to Harris's deposition, Maurice Abisdid was arrested for the two shootings and subsequently convicted of the crimes.

The IAS court denied a motion by plaintiffs to restore the case to the calendar and granted summary judgment on a cross motion by the city seeking summary judgment (CPLR 3212) or, alternatively, dismissal of the complaint on the ground that it fails to state a cause of action (CPLR 3211 [a] [7]). The city contended that plaintiffs have failed to establish a "special relationship" between themselves and the municipality which is prerequisite to recovery. In granting the cross motion, the IAS court held that the testimony of Calvin Harris, taken at his examination before trial, constitutes no more than "mere allegations" as to the existence of such a relationship and is therefore legally insufficient to defeat the city's motion for summary judgment.

■ The test on a motion for summary judgment is whether the pleadings raise a triable issue of fact (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169; *Di Sabato v Soffes*, 9 AD2d 297). In this regard, the credibility of the parties is not generally a proper consideration for the court (*Capelin Assocs.*

*v Globe Mfg. Corp.,* 34 NY2d 338), and statements made in opposition to the motion must be initially accepted as true *(Patrolmen's Benevolent Assn. v City of New York,* 27 NY2d 410, 415; *Cohn v Lionel Corp.,* 21 NY2d 559). Issues of fact raised by testimony given during examinations before trial will operate to preclude the granting of summary judgment *(Stillman v Ford,* 22 NY2d 48, 54; *Cohoes Rod & Gun Club v Firemen's Ins. Co.,* 134 AD2d 782; *Unger v 351 Broadway Rest. Corp.,* 54 AD2d 695; *Durant v Grange Silo Co.,* 12 AD2d 694).

It was error for the lower court to characterize Calvin Harris's deposition testimony as "mere allegations". Rather, it must be regarded as indicative of the evidence to be adduced at trial from a competent witness. It is significant that, in support of its cross motion, the city refrained from submitting an affidavit by anyone with personal knowledge of the facts (CPLR 3212 [b]) or an acceptable substitute for an affidavit, such as deposition testimony *(Olan v Farrell Lines,* 64 NY2d 1092). The city's pleadings contain only counsel's bald conclusory assertion that the facts do not support the imposition of a special duty upon the city to protect Laverne Harris, a statement which can be accorded no probative value *(Hasbrouck v City of Gloversville,* 102 AD2d 905, *affd* 63 NY2d 916; *Farragut Gardens No. 5 v Milrot,* 23 AD2d 889) unless supported by documentary evidence *(Zuckerman v City of New York,* 49 NY2d 557, 563). It is clear, therefore, that the city, in order to prevail, must demonstrate that the complaint is insufficient as a matter of law. Upon such an application, the function of the court is even more limited than on a motion for summary judgment generally, the operative criterion being that "a complaint should not be dismissed on a pleading motion so long as, when the plaintiff is given the benefit of every possible favorable inference, a cause of action exists" *(Rovello v Orofino Realty Co.,* 40 NY2d 633, 634; *Arrington v New York Times Co.,* 55 NY2d 433, 442).

■ Turning to the merits of the case, the city first contends that any assurances of police protection upon which plaintiffs may have relied have not been shown to have been authorized by the city. In view of the imposition of liability based upon assurances of police protection given by a telephone operator *(De Long v County of Erie,* 60 NY2d 296), it cannot be said that, as a matter of law, plaintiffs' reliance upon assurances allegedly given by detectives in charge of the investigation was unjustified. Moreover, it is patently unreasonable to require a citizen to make inquiry into the precinct chain of

command to determine the authority of an individual detective to make provision for the protection of the citizen and his family.

As an additional consideration, the leading case in this area of tort law holds that where, as here, "persons actually have aided in the apprehension or prosecution of enemies of society under the criminal law, a reciprocal duty arises on the part of society to use reasonable care for their police protection, at least where reasonably demanded or sought" *(Schuster v City of New York,* 5 NY2d 75, 81). The furnishing of Abisdid's name, physical description and photograph to the police by the Harrises certainly aided in his apprehension. Therefore, even in the absence of any promise of protection, there is precedent (albeit by a sharply divided court) to indicate that the duty to provide police protection devolved upon the city by operation of law.

The city also argues that, under the circumstances, plaintiffs' reliance upon the detectives' alleged representations was unjustified. This contention is based entirely upon the Court of Appeals decision in *Cuffy v City of New York* (69 NY2d 255).

The *Cuffy* case *(supra)* indeed bears some factual similarity to the matter under review. The Cuffys were promised that their assailant "would be arrested or something else would be done 'first thing in the morning' " (69 NY2d 255, 263, *supra).* In the instant case, the police are alleged to have promised, in Calvin Harris's words, "They would apprehend the boy, and they would have someone watching my house." The issue before the court in both instances is the reasonableness of the plaintiffs' reliance on the representations made to them by the police.

The difference in the procedural posture presented by the two cases, however, cannot be overemphasized. In *Cuffy (supra),* the court undertook to review a judgment entered upon a verdict rendered after trial. Therefore, the court had before it a full exposition of the facts, from which it could assess whether the plaintiffs' reliance on the promise made to them was reasonable under the circumstances. The instant appeal concerns only the propriety of a grant of summary judgment upon a record which is devoid of any denial that the police either gave assurance that protection would be provided or actually undertook to provide such protection. As noted, the record contains no affidavit by a city employee having personal knowledge of the facts and circumstances of the case.

The city merely contends that "at some time during the forty days that elapsed between the two shootings it became reasonably clear that the police were not watching the building. Mr. Harris had never observed anyone doing so." Therefore, the city argues, there was no reasonable expectation that police protection was being provided.

In order to reach this conclusion, however, the court is required to adopt the particular construction of the facts advanced by the city. It is well settled that, on a motion for summary judgment, the function of the court is one of issue finding, not issue determination (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Wiener v Ga-Ro Die Cutting,* 104 AD2d 331, *affd* 65 NY2d 732). Furthermore, because the city's motion attacks the sufficiency of the pleadings (CPLR 3211 [a] [7]), the allegations of the complaint, as supplemented by plaintiffs' affidavits and the deposition testimony of Calvin Harris, "must be given their most favorable intendment" (*Arrington v New York Times Co.,* 55 NY2d 433, 442, *supra; Dulberg v Mock,* 1 NY2d 54, 56).

Viewed from this perspective, the pleadings state that Calvin Harris first requested protection at some point during his hospitalization, which began on December 29, 1981 (the date he was shot by Maurice Abisdid) and lasted for "several weeks". The promise that protection would be provided and Abisdid apprehended was not forthcoming until Calvin Harris personally visited the 44th Precinct to speak with Detectives Nealon, Walsh and Pagano, a visit which took place "two or three" days after he was discharged form the hospital, or at some time in the latter part of January 1982. On the numerous occasions that he visited or called the precinct house, those promises were reinforced, which led Mr. Harris to believe that the police had undertaken a continuing duty to secure the arrest of his attacker and safeguard his family. In the absence of any indication that the Harris family took any steps to protect themselves, such as changing their address or keeping firearms in their home, it is apparent that they actually did rely upon the police to provide protection. Without the imposition of any time limit upon the promised protection and in view of the repeated reassurances made by the police, the Harris family was entirely justified in their belief that their home was being protected at the time Laverne Harris was shot on February 6, 1982. The fact that no police presence was noted by Calvin Harris is not conclusive since it is reasonable to assume that, in the effort to appre-

hend Abisdid, unmarked cars and nonuniformed officers were employed to stake out the area around the Harris home.

This is not a case in which the police are alleged to have failed to undertake a duty to protect a threatened individual and, thus, cannot be held liable for breach of an obligation never assumed (*Riss v City of New York,* 27 AD2d 217, *affd* 22 NY2d 579). In *Riss,* the complaint was dismissed by the trial court at the close of the entire case. In affirming the judgment, this court noted that, although extravagant threats had been made by a disappointed suitor against his victim, there was no indication that he presented such an imminent danger to the plaintiff "that extraordinary police activity was so indicated that the failure to take it can be deemed unreasonable conduct" (*Riss v City of New York,* 27 AD2d 217, 219, *supra*). In the matter before us, the imminence of the danger posed by Abisdid to the Harris family is amply demonstrated by his assault upon Calvin Harris.

Appropriate precedent for disposition of this matter is provided by this court's affirmance, on the opinion of the court below, in *Sorichetti v City of New York* (70 AD2d 573, *affg* 95 Misc 2d 451, *judgment against the city affd* 65 NY2d 461) in which the assailant's propensity for violence towards his family was documented by an order of protection granted to the mother of the infant victim. Further precedent for the factual and procedural posture of this matter is provided by *Zibbon v Town Cheektowaga* (51 AD2d 448, *appeal dismissed* 39 NY2d 1056). In that case, the police were notified that the assailant had threatened a woman, shot out a window in her residence and told her that he was going to Buffalo to kill one of the victims. The court concluded that the plaintiff's allegations if proven, "arguably" demonstrated that the victims had relied upon assurances of police protection which was at first provided and later withdrawn, without notice (51 AD2d 448, 453).

The matter under review presents an identical procedural posture. The only issue raised by the city, whether plaintiffs' reliance on the promised protection was reasonable, constitutes a triable issue of fact. As the record is devoid of any denial by the city that promises of protection were made to Calvin Harris or that steps to provide such protection were taken by the police, those issues are not before us.

Accordingly, the order of the Supreme Court, Bronx County (McGee, J.), entered December 10, 1987, granting defendant

city's cross motion for summary judgment and denying plaintiffs' motion for restoration of the case to the Trial Calendar, and the judgment entered thereon on January 26, 1988, should be reversed, on the law, to the extent appealed from, without costs, the motion granted, the cross motion denied, the judgment vacated and the matter restored to the calendar for further proceedings consistent herewith.

KUPFERMAN, J. P., ASCH, WALLACH and SMITH, JJ., concur.

Order, Supreme Court, Bronx County, entered on December 10, 1987, and judgment of said court entered thereon on January 26, 1988, unanimously reversed, on the law, to the extent appealed from, without costs and without disbursements, the motion granted, the cross motion denied, the judgment vacated and the matter restored to the calendar for further proceedings consistent herewith.