■ WENDY A. MORRIS et al., Appellants, v LENOX HILL HOSPITAL et al., Respondents. MICHAEL WALDMAN et al., Appellants, v LENOX HILL HOSPITAL et al., Respondents. [647 NYS2d 753] —Orders of the Supreme Court, New York County (Karla Moskowitz, J.), both entered on or about July 1, 1994, which granted defendants' motion for summary judgment to the extent of granting them partial summary judgment dismissing plaintiffs' respective causes of action for negligence, reversed, to the extent appealed from, on the law, without costs, and the causes of action for ordinary negligence reinstated.

In these two personal injury actions, consolidated for trial, the injured plaintiffs assert causes of action for ordinary negligence and medical malpractice arising from the poisoning of intravenous fluid, administered while each was unconscious and recovering from orthopedic surgery. The surgeries were performed on the morning of April 21, 1989 in operating rooms 4 and 5, located on the 10th floor of defendant Lenox Hill Hospital. In both cases, Pavulon, a neuromuscular blocking agent, was injected into intravenous bags, causing the patients to suffer respiratory paralysis. Both were treated with muscle relaxant reversal agents and revived.

Upon investigation, it was discovered that one intravenous bag from each operation bore a needle puncture mark and that there was a high concentration of Pavulon in the solution. Discarded vials of the anesthetic and wrappings from intravenous bags were found under a shelf in a storage room, located just off the operating rooms on the 10th floor. This room was not locked, and detectives with the New York City Police Department concluded that this is where the tampering probably took place.

It is plaintiffs' theory that defendant hospital was negligent in failing to secure the room in which the Pavulon was stored. Defendants, in seeking dismissal of the complaints (CPLR 3211 [a] [7]; 3212), argue that, because the person who intentionally injected the potentially lethal amount of Pavulon into the intravenous solution bags has never been identified, the temporary paralysis experienced by the injured plaintiffs is attributable to the act of an intervening agent. Therefore, they contend, even presuming that the hospital was negligent in failing to lock the storeroom or otherwise secure the anesthetic, any injury is attributable to a criminal and unforeseeable superseding act that breaks any causal connection with the purported negligence.

Defendants contend that reinstatement of the respective claims for ordinary negligence is only appropriate "upon a

showing, not made in the court below nor here * * * that a person or persons responsible for committing these acts was unauthorized to be on the 10th floor or in the Department of Anesthesia." Defendants' brief also states that the poisoning agent, Pavulon, was stored "in the Department of Anesthesia, itself * * * accessible only to authorized hospital personnel." Thus, defendants do not dispute the duty of a hospital to safeguard the welfare of its patients, even "from harm inflicted by third persons, measured by the capacity of the patient to provide for his or her own safety" (*Clinton v City of New York*, 140 AD2d 404, 405 [liability imposed on hospital for stabbing by another patient] [citing *Killeen v State of New York*, 66 NY2d 850; *Mochen v State of New York*, 57 AD2d 719], *lv denied* 73 NY2d 703). Nor do defendants deny the responsibility of a hospital to protect against unauthorized use of drugs under its control. They simply contend that limiting the availability of anesthetic drugs to authorized hospital personnel was adequate to fulfill that duty.

Defendants ask this Court to conclude that it was the act of "one or more demented individuals" or a "criminal assailant or assailants" that led to the adulteration of the solution in the intravenous bags. However, it would be more accurate to state that there is an absence of proof with respect to who administered the Pavulon, when it was introduced into the intravenous bags, how it was acquired or where the tampering took place, except that the evidence suggests it was on the 10th floor of the hospital. Defendants therefore seek to deny the injured plaintiffs recovery on their ordinary negligence theory because the circumstances under which the drug came to be introduced into the intravenous solution and the person or persons responsible cannot be ascertained.

It is well settled that where the facts permit conflicting inferences to be drawn, summary judgment must be denied (*Dollas v Grace & Co.*, 225 AD2d 319). Therefore, while it is plausible that the criminal act of an intervening agent caused the harm for which recovery is sought, adopting defendants' theory requires the resolution of factual inferences in favor of defendants, which is improper on a motion for summary judgment seeking the dismissal of a cause of action (*Harris v City of New York*, 147 AD2d 186, 191).

Questions of fact are raised by the testimony of plaintiffs' experts that the hospital's failure to secure anesthetic drugs constitutes a deviation from accepted practice. But even ignoring this issue, dismissal of the causes of action for ordinary negligence asserted against the hospital is unwarranted. The

circumstances of this incident afford sufficient basis for an inference of negligence under the doctrine of res ipsa loquitur: it involves injury which would not have occurred in the absence of negligence in safeguarding a dangerous substance, admittedly under the hospital's exclusive control (Richardson, Evidence § 93 [Prince 10th ed]). In view of the concession by the hospital that access to the Pavulon was restricted to its agents, plaintiffs have established a prima facie case of negligence (Fisch, New York Evidence § 1137, at 654 [2d ed]), and summary judgment dismissing their claims for ordinary negligence must be denied. Concur—Rosenberger, J. P., Ellerin and Rubin, JJ.; Tom, J., dissents in a memorandum; Kupferman, J., concurs in the dissent in a separate memorandum, all as follows:

Tom, J., (dissenting).

The two underlying personal injury actions were consolidated both for trial and on appeal and concern the identical issue: whether or not defendants may be held liable for the act of an unidentified perpetrator, who injected a powerful paralytic drug into intravenous bags used to administer intravenous fluids to plaintiffs Wendy Morris and Sherwood Waldman while they were surgical patients in defendant Lenox Hill Hospital ("Lenox Hill").

On April 21, 1989, two separate incidents occurred in Operating Rooms 4 and 5 at Lenox Hill. In Operating Room 5, Ms. Morris, who had been admitted that morning, underwent arthroscopic surgery to repair a dislocated patella. Surgery commenced at approximately 11:43 A.M., Ms. Morris was administered inhalation anesthesia and was given Ringer's lactate solution intravenously. At approximately 12:00 P.M., Ms. Morris became incapable of breathing on her own and remained unresponsive. The anesthesiologist present manually ventilated the patient for the rest of the procedure and at approximately 12:50 P.M., Ms. Morris remained incapable of breathing on her own and was placed on a respirator.

Mr. Waldman was taken to Operating Room 4 at approximately 9:00 A.M., where he was placed under general anesthesia in preparation for arthroscopic surgery on his left shoulder. At the conclusion of surgery, Mr. Waldman, whose vital signs were then normal, was given Ringer's lactate intravenously. Upon the patient's subsequent arrival in the recovery room, however, his respiration had decreased and was being assisted manually with an "Ambu bag". Mr. Waldman's condition continued to deteriorate and he became unable to breathe on his own and completely paralyzed. At 2:50 P.M., ap-

proximately $3^1/_2$ hours after the completion of surgery, and after being given doses of Narcan, a narcotic antagonist, and Neostigmine, a reversal agent for muscle relaxants and neuromuscular blockers, Mr. Waldman regained the ability to breathe on his own.

At approximately 3:00 P.M., Dr. Louis Fierro, Ms. Morris' anesthesiologist, began administering Tensilon to his patient, which is a muscle relaxant reversal agent. At his deposition, Dr. Fierro testified that he ordered Tensilon because he had heard what had befallen Mr. Waldman in the recovery room. When Ms. Morris began to respond in a positive manner, additional Tensilon was administered and at approximately 7:45 P.M., she began to breathe on her own.

Urine samples from both Mr. Waldman and Ms. Morris tested positive for Pavulon, a neuromuscular blocking agent, and as a result, Lenox Hill sent the intravenous bags used during both operations to the Chief of Toxicology at the Suffolk County Medical Examiner's Office and notified both the New York City Police Department and the New York County District Attorney's Office. The hospital, which had already visually examined the bags, had discovered that one bag from each of the surgeries had hypodermic needle puncture marks on the side nipple, where drugs are normally added to the solutions, indicating that the lactate solutions had been deliberately tampered with.

On April 26, 1989 the Suffolk County Medical Examiner's Office reported that one intravenous bag from each of the surgeries contained a high concentration of Pavulon. On April 27, the New York City detectives began a full-scale investigation of the incident. During the course of the investigation, the police visited the storage room where the intravenous bags were kept and found the door open and unlocked. Also contained in that room, in an unlocked refrigerator, was Pavulon, as well as other muscle relaxants.

Michael Sheehan, a retired New York City Police Department detective, who was a detective second grade during the investigation, testified that: "When I went to the anesthesia storage room, the door to the room was wide open and unlocked * * *. The investigating officers and detectives found discarded under and behind shelves in the storage room six opened plastic outer wrappings for intravenous bags; two pieces from these plastic wrappings; one plastic outer wrapping for a small intravenous bag; three intravenous bottle protective covers; one small intravenous bag labeled 'Anectine', a neuromuscular blocking agent, with clear liquid residue; several small vials or

ampules of Pavulon which were not full and appeared to have hypodermic needle puncture marks on their top; parts of metal caps or covers for the vials; and a 10 cc. syringe with clear liquid residue inside the syringe. It appeared to me that someone had attempted to hide the discarded Pavulon Vials, metal covers, hypodermic needle, and intravenous bag wrappings by secreting these items behind and under the storage shelves. These items were vouchered by the Crime Scene Unit." While as a result of the police and hospital's investigation there is little doubt that the tampering occurred in the hospital, and specifically in the anesthesia storage room, no suspects were apprehended and no further incidents transpired at Lenox Hill.

Plaintiffs commenced these actions by the service of separate summonses and complaints in August 1990 and, following defendants' joinder of issue, discovery ensued. In March 1994, defendants moved for summary judgment dismissing the complaints, arguing, with regard to the negligence claims, which are the only ones in issue on this appeal, that no triable issues of fact existed because the patients' injuries were not the result of Lenox Hill's negligence but, rather, were the result of an unforeseeable intervening criminal act that breaks the causal nexus between plaintiffs and defendants. The IAS Court, in an oral decision, granted defendants' motion to the extent of dismissing all of the negligence causes of action, holding, *inter alia*, that: "There is nothing in the record that puts this hospital on notice or shows this hospital acted in any negligent fashion, and this was a completely unforeseeable event, and you don't have anything to show me that even locking the door * * * would have prevented that." Plaintiffs appeal, urging that the issue of whether the Pavulon poisonings were foreseeable is a question of fact that should not have been decided on a motion for summary judgment. I disagree.

In order to establish a prima facie case, plaintiff must show that defendant was negligent and that such negligence was a substantial cause of the events which produced the injury (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315; *Akins v Glens Falls City School Dist.*, 53 NY2d 325, 333; *Solomon v City of New York*, 66 NY2d 1026, 1027).

It is well-settled that a hospital is under a duty to exercise reasonable care and diligence in safeguarding its patients from injury inflicted by third persons, the degree of which is measured by the patient's capacity to provide for his/her own safety (*Killeen v State of New York*, 66 NY2d 850, 851-852; *Clinton v City of New York*, 140 AD2d 404, *lv denied* 73 NY2d

703; *Zophy v State of New York*, 27 AD2d 414, 416, *affd* 22 NY2d 921).

In the case at bar, it is clear that a factual issue has been raised concerning whether defendants breached their duty when they failed to store the Pavulon under lock and key. Defendant Dr. Fierro, in his deposition, testified that anesthesia equipment and accessories, including Pavulon and intravenous bags, which are not inherently dangerous or harmful, were kept in the anesthesia storage room accessible only to authorized hospital personnel. Therefore, defendants claim they were not negligent. Plaintiff, on the other hand, submitted an affidavit from a purported expert attesting to the fact that it was a departure from good medical practice not to keep the Pavulon in secure storage. However, regardless of whether the Pavulon was properly placed in storage by defendants, plaintiffs' negligence causes of action should be dismissed as plaintiffs have failed to raise any issue of fact concerning whether defendants' alleged breach proximately caused their injuries.

An interruption of the nexus between defendant's conduct and plaintiff's injury by the intervening act of a third party may relieve defendant of liability if such act is extraordinary under the circumstances and unforeseeable, thereby constituting a superseding cause which breaks the causal connection. If, however, the intervening act is a natural and foreseeable consequence of circumstances created by defendant, liability will attach (*see, Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507; *Derdiarian v Felix Contr. Corp., supra*; *Kush v City of Buffalo*, 59 NY2d 26; *Gordon v Eastern Ry. Supply*, 82 NY2d 555; PJI 2:72 [Supp]; Restatement [Second] of Torts §§ 448, 449).

As elaborated upon in Prosser and Keeton (Torts § 44, at 302-303 [5th ed]):

"The question is always one of whether the defendant is to be relieved of responsibility, and the defendant's liability superseded, by the subsequent event. In general, this has been determined by asking whether the intervention of the later cause is a significant part of the risk involved in the defendant's conduct, or is so reasonably connected with it that the responsibility should not be terminated. It is therefore said that the defendant is to be held liable if, but only if, the intervening cause is 'foreseeable.'

"But here, as before, this overworked and undefined word covers a multitude of sins. *It is at least clear that in many cases recovery has been allowed where the intervening cause was not one which any reasonable actor could be expected to*

*anticipate or have in mind, but it is regarded as 'normal' to the situation which the actor has created."* (Emphasis added.)

It has been held that "an intervening intentional or criminal act will generally sever the liability of the original tort-feasor * * * [but] [t]hat doctrine has no application when the intentional or criminal intervention of a third party or parties is reasonably foreseeable" (*Kush v City of Buffalo, supra,* at 33; *Nallan v Helmsley-Spear, Inc., supra*). However, the defendant is not responsible for the harm inflicted "merely because the situation which his negligence has created has afforded an opportunity or temptation for its infliction." (Restatement [Second] of Torts § 448, comment *a;* Prosser and Keeton, Torts § 44, at 313 [5th ed]).

The question of foreseeability is generally a factual issue to be resolved on a case-by-case basis by the fact finder. However, in certain instances involving independent intervening acts which operate, but do not flow, from the original negligence, and where only one conclusion may be drawn from the established facts, the question of legal cause may be decided as a matter of law (*Derdiarian v Felix Contr. Corp., supra,* at 315). I find that the factual circumstances in this case fall within this exception.

In the matter at bar, the Pavulon believed used in the poisonings was left unlocked in the anesthesia storage room on a floor consisting of operating theaters where only authorized personnel (certain employees of the hospital) were permitted. There was no public access to this floor, or this area. It is important to note that there is absolutely no proof, or suggestion, that a member of the public was able to gain access to the storage area or the subject floor and, despite all of plaintiffs' protests about the door being unlocked, the floor was still restricted to hospital personnel only. There are no accusations of lax security with regard to public access to the floor or notice that unauthorized members of the public had previously been found on the operating floor or in or near the storage area.

Neither plaintiffs nor defendants have presented any evidence whatsoever as to whom the perpetrator might be. The perpetrator may have been an authorized hospital employee with accessibility to the muscle relaxant, such as a physician, a nurse anesthetist, or any other nurse or technician authorized and scheduled to be in either or both surgical suites. Under such circumstances, the storage of Pavulon under lock and key would not have prevented this crime.

I therefore conclude that, under the circumstances of this

case, the act of an individual, most likely a hospital employee, seeking to intentionally murder patients in the hospital is extraordinary in nature and not a foreseeable consequence of defendants' leaving the door to the storage room open and accessible only to employees during the hours which the operating rooms function. I also find that the plaintiffs' continued reference to the "Angel of Death" Pavulon poisonings on Long Island, which occurred nearly two years earlier, and outside New York City, as placing Lenox Hill on notice of such occurrences, is too remote to make the within unfortunate incidents foreseeable, i.e., because Good Samaritan Hospital had hired a murderer on its staff, there was no reason for Lenox Hill to foresee that it had. Further, defendant hospital has never experienced a similar incident on its premises in the past.

Plaintiffs' reliance on *Kush v City of Buffalo* (*supra*) is misplaced. In *Kush*, two 15-year-old student-employees were left completely unsupervised during their overseer's coffee break while they were working in the local high school. The students went to the school's chemistry laboratory, which, along with the adjacent storeroom, was not locked, and stole various chemicals, which they placed in plastic bags and dropped out of a window into bushes below, planning to retrieve them later. In the interim, an 8-year-old boy, playing on the school's grounds, found them and was injured. The Court of Appeals, in concluding that the high school students' theft of the chemicals was not an intervening, superseding cause, held that: "Defendant's duty was to take reasonable steps to secure the dangerous chemicals *from unsupervised access by children*. By its very definition, any breach of this duty that leads to injury will involve an intentional, *unauthorized taking of chemicals by a child*." (*Supra*, at 33 [emphasis added].)

In the matter at bar, neither a child nor, apparently, a member of the public acquired the Pavulon, and access to the muscle relaxants was restricted to hospital personnel on the operating floor. Since the question of proximate cause, and foreseeability, is essentially a function of a policy concerning whether defendant's negligence is beyond the point at which responsibility should be imposed (*Ventricelli v Kinney Sys. Rent A Car*, 45 NY2d 950, 952; *Palsgraf v Long Is. R. R. Co.*, 248 NY 339, 345), I conclude that defendant's failure to lock the storage room to its own employees under the circumstances of this case was not a proximate cause of plaintiffs' injuries.

Accordingly, I would affirm the order of the IAS Court.

Kupferman, J. (concurring in dissent).

Justice Tom in his dissent has well analyzed the situation.

In the natural order of things, I can conceive of nothing which the defendant hospital could have done to protect against the malevolent action which took place with respect to the injection of Pavulon into the intravenous bags.

Accordingly, unless we are to determine that a hospital is absolutely liable in a situation of this type, the plaintiffs' causes of action for negligence should be dismissed and the orders of the IAS Court affirmed.

With respect to absolute liability, that is a matter for the Legislature.