[676 NYS2d 715]

Thomas M. Oot et al., Appellants, v Home Insurance Company of Indiana, Respondent.

Fourth Department, July 8, 1998

**APPEARANCES OF COUNSEL**

*Setright, Ciabotti & Longstreet,* Syracuse (*Michael J. Long-street* of counsel), for appellants.

*Hiscock & Barclay, L. L. P.,* Syracuse (*Diane Van Epps* of counsel), for respondent.

**OPINION OF THE COURT**

FALLON, J.

█ █ The issue before us is whether a clause in a professional liability policy that defines an insured in part as "any lawyer * * * who was a former partner * * * of the firm [insured under the policy] or predecessor firm(s)" includes a former partner who was disbarred after the occurrence of the events giving rise to the claim. We conclude that it does. We further conclude that coverage for the claim is not excluded by the policy and that plaintiffs' motion insofar as it seeks summary judgment in favor of plaintiff Thomas M. Oot should be granted.

Thomas was formerly in partnership with his father, plaintiff Earl L. Oot, practicing law under the name Oot Law Offices. Beginning in 1984, defendant issued professional liability insurance policies to Oot Law Offices. In December 1991, Oot Law Offices submitted a renewal application listing Earl as the only working attorney, and on which the computer-generated name of Thomas Oot had been crossed out and the word "delete" written next to it. In March 1992, this Court accepted the resignation of Thomas from the Bar and his name was stricken from the roll of attorneys of the State of New York (*Matter of Oot*, 181 AD2d 1076). Effective March 1, 1992, defendant issued a "claims made" renewal policy for Oot Law Offices (the policy). Under the policy, defendant agreed to pay on behalf of the insured "all sums in excess of the deductible amount * * * which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD caused by any act, error or omission for which the Insured is legally responsible, and arising out of the rendering or failure to render professional services for others in the Insured's capacity as a lawyer".

Olde Mill Associates (Olde Mill) commenced a lawsuit (the underlying action) against Earl, his brothers,[1] his son Thomas, and Oot Law Offices in November 1992. Olde Mill alleged that Earl had performed legal services for it with respect to the refinancing of a note and mortgage held by Earl and his brothers as mortgagees, without disclosing his conflict of interests and in breach of his fiduciary duty. Notice of the underlying action was given to defendant. Defendant refused to defend and

---

1. The causes of action against the other Oot brothers were withdrawn by Olde Mill.

disclaimed coverage on the claim with regard to Earl; no disclaimer was issued with respect to Thomas. When the underlying action was settled, the settlement agreement stated that Earl, Thomas and Oot Law Offices would pay $90,000 "as a result of possible legal malpractice and breach of fiduciary relationship". Earl paid 25% of the settlement and Thomas paid 75%, according to their ownership interests in the partnership at the time of the events out of which the claim arose. In August 1995, they commenced the present action, alleging breach of contract, estoppel and deceptive business practices. Supreme Court granted that part of plaintiffs' motion for summary judgment with respect to Earl's claim, and denied that part of the motion with respect to Thomas's claim. The court also granted that part of defendant's cross motion seeking dismissal of Thomas's claim. The court granted Earl judgment representing 25% of the $90,000 settlement amount and directed an inquest to determine the reasonable costs incurred by Earl "in defending and/or commencing" the underlying action. Plaintiffs appeal.

Under the policy, the term "insured" is defined as:

"(a) The Named Insured firm or persons named in the Declarations, or any lawyer * * * who during the policy period becomes a partner, officer, director or employee of the firm;

"(b) any lawyer * * * who was a former partner, officer, director or employee of the firm or predecessor firm(s) solely while acting in a professional capacity on behalf of such firms;

"(c) any lawyer * * * who was a partner, officer, director or employee of the firm or predecessor firm(s) who has retired from the practice of law, but only for those professional services rendered prior to the date of retirement from the Insured firm;

"(d) any non-lawyer who was, is now, or hereinafter becomes an employee of the firm or predecessor firm(s) solely while acting within the scope of such person's duties as an employee" (Policy section A [I] [a]-[d]).

Plaintiffs contend that the named insured, Oot Law Offices, under section A (I) (a), includes every partner—including a former partner—who was financially responsible for the liabilities of the firm when the claim against the policy arose. Even if Thomas is not covered as an individual insured, they contend,

his partnership liability should be covered.[2] Alternatively, they contend that Thomas is covered under paragraph (b) as a former partner who was liable for actions taken in a professional capacity on behalf of his firm, irrespective of his status as an attorney at the time a claim was made against the policy, or that he is covered either as a "retired" partner under paragraph (c) or as an employee under paragraph (d). They contend that the policy's broad definition of the term "insured" is intended to provide "tail" coverage for those sued for firm matters after they leave the firm. They contend further that defendant abandoned any reliance upon the policy exclusion of a claim based on a judgment or adjudication arising out of dishonesty or fraud, and that no other exclusion relied upon by defendant applies in this case.

"The construction and effect of a contract of insurance is a question of law to be determined by the court where there is no occasion to resort to extrinsic proof" (*Hartford Ins. Co. v Halt*, 223 AD2d 204, 212, *lv denied* 89 NY2d 813; *see, Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 172; *Niagara County v Utica Mut. Ins. Co.*, 80 AD2d 415, 419 [opn by Doerr, J.], *lv dismissed* 54 NY2d 608). "The parties' intent is to be ascertained by examining the policy as a whole, and by giving effect and meaning to every term of the policy [citations omitted]. Reasonable effort must be made to harmonize all of the terms of the contract [citations omitted]. Unless otherwise defined by the policy, words and phrases are to be understood in their plain, ordinary, and popularly understood sense, rather than in a forced or technical sense" (*Hartford Ins. Co. v Halt, supra,* at 212). "Where the provisions of an insurance contract are clear and unambiguous, they must be enforced as written [citations omitted]. However, 'where the meaning of a policy of insurance is in doubt or is subject to more than one reasonable interpretation, all ambiguity must be resolved in favor of the policyholder and against the company which issued the policy' [citation omitted]. This rule is enforced even more strictly when the language at issue purports to limit the company's liability" (*Venigalla v Penn Mut. Ins. Co.*, 130 AD2d 974, 975, *lv dismissed* 70 NY2d 747).

■ It is unnecessary to decide whether Thomas is an insured under paragraphs (a), (c) or (d) because we conclude that he is an insured under paragraph (b).

---

**2.** It appears from the record that the disbarment of Thomas Oot is unrelated to his liability for the underlying action.

Thomas was covered under section A (I) (b) of the policy, which defines an insured as "any lawyer * * * who was a former partner * * * of the firm or predecessor firm(s)". The term "any lawyer" is not defined in the policy and thus "should be accorded its ordinary and accepted meaning" (*Hartford Ins. Co. v Halt, supra,* at 213). Black's Law Dictionary defines "lawyer" as: "A person learned in the law; as an attorney, counsel, or solicitor; a person licensed to practice law. Any person who prosecutes or defends causes in courts of record or other judicial tribunals of the United States, or of any of the states, or whose business it is to give legal advice or assistance in relation to any cause or matter whatever" (Black's Law Dictionary 888 [6th ed]). Defendant contends that Thomas had to be a member of the Bar when the policy was issued and when the underlying action was commenced in order to be an "insured" under section A (I) (b). Defendant submits no extrinsic evidence to support its construction of that section. We agree with plaintiffs that the term "any lawyer" does not clearly exclude persons who were no longer members of the Bar when the professional liability claim was made against them, but who were licensed to practice law at the time the professional services giving rise to the claim were rendered. Thus, the policy is ambiguous. "If an ambiguity exists, the insurer bears the burden of establishing that the construction it advances is not only reasonable, but also that it is the only fair construction [citations omitted], viewed through the eyes of the 'average man on the street' [citation omitted]" (*Venigalla v Penn Mut. Ins. Co., supra,* at 975). Defendant has not met that burden on this record.

Indeed, defendant contends that Thomas could have purchased coverage for an additional claim reporting period under section B (V) of the policy. That optional coverage, it argues, allows a former insured the opportunity to extend coverage to claims made against him beyond the stated policy period. Had Thomas purchased "Non-Practicing Reporting Period" coverage as permitted by the policy in force when Thomas ceased the private practice of law, defendant contends, coverage would have continued for covered claims. Defendant further contends that interpreting section A (I) (b) of the policy to cover Thomas should not be allowed because he would be obtaining such coverage free of charge.

A reasonable interpretation of the policy, however, is that the extended coverage is designed to cover former partners or associates of firms that do not renew their policies, and under which policies, therefore, no "tail" coverage exists. The policy

offers other "tail" coverage when the policy itself is not renewed. Section B (IV) of the policy makes available "Optional Extended Reporting Periods" coverage to named insureds "[i]f the policy shall be cancelled by the Company or by the Named Insured, [ ] if the Company or the Named Insured shall not renew the policy for any reason" or if the policy is offered under less favorable terms.

Section B (V), which defendant argues was Thomas's remedy, provides in part: "V. Option to Purchase Non-Practicing Reporting Period: If any Insured retires or otherwise ceases the private practice of law during the policy period, then upon payment of an additional premium as set forth herein, the Insured shall have the option to extend the insurance afforded by this policy to apply to CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING (a) 12 MONTHS, (b) 24 MONTHS, (c) 36 MONTHS or (d) an unlimited period immediately following the expiration date of this policy as stated in the Declarations, but only by reason of any act, error or omission in professional services rendered before the Insured's date of retirement or termination of private practice and otherwise covered by the insurance, PROVIDED there is no other insurance procured on or after the Insured's date of retirement or termination of practice which covers the Insured for such liability or claim. Such other insurance shall render this coverage inapplicable, even though the limits of liability of such other insurance may be inadequate to pay all losses and claim expenses and/or the deductible amount and deductible provisions of such other insurance may be different from those of this policy."

A former section B (VI) of the policy, amended as of 1989, provided that this "Non-Practicing Reporting Period" coverage would not "be available when any Insured's license or right to practice his profession is revoked, suspended by or surrendered at the request of any regulatory authority". That language does not appear in the amended provisions. Rather, amended section B (VI) provides that "[t]he Non-Practicing Reporting Period shall be available as an alternative to the Optional Reporting Period only if the Named Insured shall have retired or otherwise ceased the private practice of law during the policy period".

"The basic 'claims made' or 'discovery' policy provides for indemnity, regardless of when the act complained of occurred, if the act is discovered and brought to the attention of the insurer during the policy period" (*Brander v Nabors*, 443 F

Supp 764, 767 [ND Miss], *affd* 579 F2d 888 [5th Cir]; *see generally, Fogelson v Home Ins. Co.*, 129 AD2d 508). Optional Extended Reporting Period coverage under this policy is available for attorneys who lose their "claims made" coverage because their firm has disbanded or discontinued coverage, but seek protection from claims later asserted based on their practice with that firm. Non-Practicing Reporting Period coverage is, as the policy language states, available as an alternative only if the insured ceased the practice of law during the policy period. Defendant's argument that Non-Practicing Reporting Period coverage is the only available "tail" coverage for Thomas ignores the fact that this reporting period coverage is the alternative for a nonpracticing attorney to Optional Extended Reporting Period coverage that is available when a firm fails to renew its policy. The language of section B (V) negates coverage under the extended reporting period for nonpracticing attorneys if there is any other insurance that covers the claim after the insured ceases to practice law. Thus, Non-Practicing Reporting Period coverage is available only if no "tail" coverage exists under the predecessor firm's policy.

The evolution of those provisions of the policy establishes that defendant knew how to exclude coverage for disbarred attorneys when it chose to. In any event, the fact that extended coverage might be available to attorneys who cease to practice law does not operate to eliminate coverage that exists for them under other policy provisions. For example, Non-Practicing Reporting Period coverage is also available for retiring attorneys, despite the fact that the insuring clause under section A (I) (c) of the policy includes "any lawyer * * * who was a partner * * * of the firm or predecessor firm(s) who has retired from the practice of law, but only for those professional services rendered prior to the date of retirement from the Insured firm".

If defendant intended to exclude from coverage former attorneys who have been disbarred, it should have stated that exclusion unambiguously. This it failed to do. The ambiguity must be resolved in favor of the insured and against the insurer (*see, United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232; *General Acc. Ins. Co. v United States Fid. & Guar. Ins. Co.*, 193 AD2d 135, 137).

Defendant further argues that, even if Thomas is found to be an insured under the policy, coverage is excluded for this particular claim. Defendant makes that argument despite its failure to cross-appeal from that part of the judgment in favor

of Earl, which implicitly finds that the claim was covered under the policy. "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case" (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652; *see, Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311). Under the rules governing the effect to be given exclusion provisions in a policy, defendant's contentions must fail and the policy in question must be construed to provide coverage to Thomas.

Section C (I) (h) excludes from coverage "any claim based upon or arising out of the work performed by the Insured, with or without compensation, with respect to any * * * partnership, limited partnership, business enterprise or other venture * * * in which any Insured *has any pecuniary or beneficial interest* * * * unless such entity is named in the Declarations" (emphasis supplied). The section further states that "ownership or shares in a corporation shall not be considered a 'pecuniary or beneficial interest' unless one Named Insured or members of the immediate family of the Named Insured *own(s)* 10% of the issued and outstanding shares of such corporation" (emphasis supplied).

The underlying action arises out of work performed by Earl for Olde Mill; Thomas did not participate, and his liability arises solely by virtue of his partnership with Earl. Section C (I) (h) does not unambiguously exclude coverage for the underlying action merely because Earl at one point held a mortgage on property owned by Olde Mill. We agree with plaintiffs that the exclusion applies only to a "pecuniary or beneficial" interest that the insured "has" at the time the claim is made for which the insured seeks coverage. The exclusion is apparently designed to exclude claims based upon legal work performed by an insured for an enterprise in which he or she has some kind of ownership interest and thus where the insured is likely to benefit directly from recovery under the policy. Because Earl was no longer a mortgagee at the time the claim was made, no such benefit exists.

In addition, it is not clear from the policy that a "pecuniary or beneficial" interest includes that of a creditor such as a mortgagee. A reasonable attorney might have believed that a *malpractice claim* against him under the circumstances present here would be covered under the policy despite that exclusion. "[E]xclusions or exceptions from policy coverage must be specific and clear in order to be enforced", and "[t]hey are not

to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (*Seaboard Sur. Co. v Gillette Co., supra*, at 311). Further, "[i]n opposing a motion for summary judgment, a defendant must lay bare his proof and show that a genuine question of fact exists" (*Little v Blue Cross*, 72 AD2d 200, 204). Defendant has not done this.

■ Finally, defendant may not raise on appeal its contention that coverage is excluded under section C (I) (a) of the policy on the ground that the underlying action involved a "judg-[ ]ment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the Insured". Although defendant raised the exclusion as an affirmative defense in its answer, defendant failed to raise the issue in its motion papers before Supreme Court (*see, Ciesinski v Town of Aurora*, 202 AD2d 984, 985).

In any event, defendant's argument ignores section C (II) of the policy, which waives the application of the exclusion to Thomas under the present circumstances. That provision states in part:

"II. Waiver of Exclusion and Breach of Conditions: Whenever coverage under any provision of this policy would be excluded, suspended or lost

"(a) because of exclusion (a) relating to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent [etc.] * * * acts or omissions by any Insured * * *

"the Company agrees that such insurance as would otherwise be afforded under this policy shall apply with respect to each and every Insured who did not personally commit or personally participate in committing one or more of the acts, errors or omissions described in any such exclusion or condition".

Neither plaintiffs nor defendant refer to that provision, which appears to eliminate the exclusion as against Thomas. In any event, as stated earlier, the issue was abandoned in Supreme Court.

Accordingly, the order should be modified by denying defendant's cross motion for summary judgment insofar as it relates to the claim of Thomas Oot and granting plaintiffs' motion for summary judgment insofar as it relates to the claim of Thomas Oot.

PINE, J. P., HAYES, WISNER and BALIO, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by FALLON, J.