OTC Intl., Ltd. v All Those Underwriters At Lloyd's of London Subscribing To Policy of Ins. Numbered Hn99abxc255 (2004 NY Slip Op 50037(U))

[*1]

OTC Intl., Ltd. v All Those Underwriters At Lloyd's of London Subscribing To Policy of Ins. Numbered Hn99abxc255

2004 NY Slip Op 50037(U)

Decided on January 29, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 29, 2004

Supreme Court, Queens County
 OTC INTERNATIONAL, LTD. - -
against
ALL THOSE UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY OF INSURANCE NUMBERED HN99ABXC255
INDEX NO. 32209/01

CHARLES J THOMAS, J.
The defendants, all those underwriters at Lloyd's of London subscribing to a policy of insurance numbered HN99ABXC255 (collectively hereinafter "the defendant insurer"), have moved for summary judgment dismissing the complaint against them. Plaintiff OTC International, Ltd. has cross-moved for summary judgment on its causes of action for indemnification.
The defendant insurer issued a "Jeweler's Block" insurance policy to plaintiff OTC International, Ltd., a manufacturer of jewelry located in Long Island City, New York. The policy initially excluded coverage for acts of theft by the insured's employees, and the policy also excluded coverage for losses discovered upon the taking of inventory. Paragraph 5 of the policy provided in relevant part: "The certificate insures against all risks of loss or damage to the above described property arising from any claim whatsoever except: (a) Loss, damage or expenses caused by or resulting from sabotage, theft, conversion or other act or omission of a dishonest character (1) on the part of the Assured or his or their employees, whether or not such acts are committed during regular business hours. *** (m) Unexplained loss, mysterious disappearances or loss or shortage disclosed on taking inventory." However, the policy contained an "Employee Infidelity Extension Clause" which covered plaintiff OTC for employee thefts "providing such loss is discovered within 72 hours of the loss occurring." The Employee Infidelity Extension Clause reads in relevant part: "Notwithstanding insuring condition 5(a) of the Policy to the contrary this insurance is extended to cover all such direct loss as the Assured shall during the period of this policy discover he has sustained from Property insured through any act or acts of theft, fraud, or dishonesty committed by an employee whilst in his service up to a limit of USD 1,000,000 any one loss or occurrence providing such loss is discovered with 72 hours of the loss occurring." (Emphasis added.) The policy has a $100,000 per loss deductible for employee infidelity claims.
On October 27, 2000, a security guard caught Igor Gamarnik, then an employee of [*2]plaintiff OTC International, Ltd., a manufacturer of jewelry located in Long Island City, New York, attempting to steal jewelry. OTC called the police, and Garmarnik admitted stealing valuables on the day he was caught, but denied any other thefts. Upon Gamarnik's arrest, the police discovered 392 of OTC's articles worth approximately $70,000 hidden in bags tied around his legs and in his car. Gamarnik, an engraver and repairer of watches, had access to OTC's vaults where gold was stored. Gamarnik was indicted and convicted of grand larceny in the second degree for stealing property worth more than $50,000, a Class C felony.
Plaintiff OTC alleges that it performed an inventory of its stock and learned that approximately $736,000 of valuables were missing, representing thousands of discontinued items and 11 packages of returned merchandise. The valuables recovered by the police amounted to less than 10 percent of the missing inventory. Most of the inventory losses had occurred in an area where Gamarnik worked. Plaintiff OTC attributes these losses to acts of theft by Gamarnik which he allegedly perpetrated during cigarette breaks when he would leave the premises. However, Yoram Scheinman, the president of plaintiff OTC, does not know when these alleged acts of theft occurred. Scheinman testified at his pretrial deposition: "I don't know if he started exactly this day or he started before [this] day, if he did this a year before." ( Tr., p. 33.)
The defendant insurer denied coverage on the ground that OTC supposedly cannot establish that there was only one loss occurring within 72 hours of discovery. In December, 2001, OTC began the instant action to recover under the policy.
"An insured seeking to recover for a loss under an insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy ***." (Vasile v. Hartford Acc. & Indem. Company, 213 AD2d 541; see, Gongolewski v. Travelers Ins. Co., 252 AD2d 569; Dato Jewelry, Inc. v. Western Alliance Ins. Co., 238 AD2d 193.) Once the insured proves a prima facie case, the burden shifts to the insurer to establish that a policy exclusion applies. "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case ***." (Continental Cas. Co. v. Rapid-American Corp., 80 NY2d 640, 652; see, Belt Painting Corp. v. TIG Ins. Co., 100 NY2d 377.) "[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer ***." (Belt Painting Corp. v. TIG Ins. Co., supra, 383; see, Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co., 34 NY2d 356.) Once the insurer shows that an exclusion applies, the burden shifts to the insured to establish that an exception to the exclusion applies. "It is well settled that where *** the existence of coverage depends entirely on the applicability of an exception to an exclusion, the insured has the duty of demonstrating that the exception governs ***." (State v. U.W. Marx Inc., 209 AD2d 784, 785; see, Northville Industries Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 89 NY2d 621; Monteleone v. Crow Const. Co., 242 AD2d 135.) In the case at bar, plaintiff OTC has the burden of showing that the "Employee Infidelity Extension Clause," an exception to the employee theft exclusion, applies.
The defendant insurer contends that plaintiff OTC cannot establish (1) that there was just one loss within the meaning of the policy and (2) that the losses were discovered within 72 hours of their occurrence. However, these contentions are thoroughly refuted by the plaintiff's attorneys in their well written memoranda of law dated October 9, 2003 and November 25, 2003. [*3]First, assuming that all of the alleged theft is attributable to Gamarnik, the policy may reasonably be construed in such a manner that there was just one loss within the meaning of the policy, not multiple losses. The policy of insurance does not define the term "loss" or "occurrence," creating ambiguities (see, e.g., Uniroyal, Inc. v. Home Ins. Co., 707 F Supp 1368), and it would be reasonable to construe those terms as covering a series of thefts by one employee from one company. (See, e.g., PECO Energy Co. v. Boden, 64 F3d 852 [numerous thefts of fuel oil over six years by a single contractor constituted part of a single occurrence for liability insurance purposes]; Howard, Weil, Labouisse, Friedrichs, Inc. v. Insurance Co. of North America, 557 F2d 1055 ["four-day trading spree engaged in by representative of brokerage firm, during which time he made numerous trades and wrote two bad checks to the brokerage firm, was a single ongoing episode resulting in a single loss"].) "[W]here the meaning of a policy of insurance is in doubt or is subject to more than one reasonable interpretation, all ambiguity must be resolved in favor of the policy-holder and against the company which issued the policy ***." (Little v. Blue Cross of Western N.Y., 72 AD2d 200, 203; see, Oot v. Home Ins. Co. of Indiana, 244 AD2d 62; Venigalla v. Penn Mut. Ins. Co., 130 AD2d 974.) " This rule is enforced even more strictly when the language at issue purports to limit the company's liability ***." (Venigalla v. Penn Mut. Ins. Co., supra, 975; Oot v. Home Ins. Co. of Indiana, supra.) Second, "[t]he vast majority of courts *** have concluded that although injury must be suffered before an insured can be held liable, the number of occurrences for purposes of applying coverage limitations is determined by referring to the cause or causes of the damage and not to the number of injuries or claims ***." (Michigan Chemical Corp. v. American Home Assur. Co., 728 F2d 374, 379; see, Uniroyal, Inc. v. Home Ins. Co., supra.) Thus, in PECO Energy Co. v. Boden (supra), the court held "that when a scheme to steal property is the proximate and continuing cause of a series or combination of thefts, the losses for liability insurance purposes constitute part of a single occurrence." In the case at bar, assuming all of the alleged thefts are attributable to Gamarnik, there was just one cause of one "loss" within the meaning of the policy. Third, the defendant insurer's interpretation of the policy is commercially unreasonable under all of the circumstances of this case. The policy had a $100,000 deductible applicable to each "loss," and given the nature of the plaintiff's business, the policy would afford the plaintiff little or no protection under the interpretation advanced by the insurer. Fourth, since there was just one loss within the meaning of the policy, the loss was discovered within 72 hours of its occurrence. Moreover, borrowing from criminal law, "[t]he Statute of Limitations of a continuous crime is governed by the termination and not the starting date of the offense." (People v. Eastern Ambulance Service, Inc., 106 AD2d 867, 868.) Fifth, the inventory clause in the policy does not bar plaintiff OTC's claim because this is not a case where an insured discovered a theft while taking inventory, and the interpretation placed on the inventory clause by the defendant insurer is commercially unreasonable. (See affidavit of Donald Yick dated November 24, 2003.) Plaintiff OTC discovered Gamarnik's larceny when a security guard apprehended him leaving the premises with valuables, not when OTC conducted an inventory. OTC conducted an inventory merely to determine how much Gamarnik had stolen. In sum, the defendant insurer did not establish that its interpretation of the policy is the only reasonable one and that, hence, it is entitled to judgment as a matter of law.
Plaintiff OTC also failed to establish that it is entitled to judgment as a matter of law. (See, Alvarez v. Prospect Hospital, 68 NY2d 320.) The record does not permit the court to [*4]conclude as a matter of law, as urged by plaintiff OTC, that all of the alleged approximately $736,000 loss is attributable to theft by one employee, Gamarnik. The evidence in this case permits conflicting inferences to be drawn. On the one hand, Gamarnik was caught with some of the plaintiff's valuables in his possession, he had access to the vaults, and he allegedly led a lavish lifestyle. On the other hand, the ease with which Gamarnik bypassed the plaintiff's security system permits the inference that other employees could have done so as well. "It is well settled that where the facts permit conflicting inferences to be drawn, summary judgment must be denied ***." (Morris v. Lenox Hill Hospital, 232 AD2d 184, 185, affd 90 NY2d 953; Myers v. Fir Cab Corp., 64 NY2d 806.) The defendant insurer also submitted evidence sufficient to create an issue of fact concerning the amount of the loss sustained by the plaintiff.
Accordingly, the motion and the cross motion are denied.
Short form order signed herewith.
 
 J.S.C.
Decision Date: January 29, 2004