■ K2 Investment Group, LLC, et al., Respondents-Appellants, v American Guarantee & Liability Insurance Company, Appellant-Respondent. [936 NYS2d 139]—

Plaintiffs are limited liability companies that made multiple loans totaling approximately $3 million to nonparty Goldan, LLC of which defendant's insured, Jeffrey Daniels, an attorney, was a member. In the legal malpractice action underlying this action, it was alleged that as attorney for plaintiffs, Daniels undertook to record mortgages in plaintiffs' favor to secure those loans, and to obtain title insurance, and that he failed to do so, rendering plaintiffs' investments unsecured. Goldan became insolvent and never made any payments on the loans. The legal malpractice action alleged that as a consequence of Daniels's negligent failure to record the mortgages or obtain title insurance, plaintiffs did not have security in the mortgaged properties, and the promissory notes evidencing the loans became uncollectible.

Plaintiffs demanded $450,000 from Daniels in full settlement of their claims. This amount was well within the $2 million aggregate and $2 million per-claim limits of the lawyers professional liability insurance policy issued to Daniels by defendant.

However, defendant disclaimed its duty to defend or indemnify based upon two exclusions in the policy. One exclusion was for claims based upon or arising out of the insured's capacity or status as an officer, director, etc., of a business enterprise. The other exclusion was for any claim arising out of the alleged acts or omissions of the insured for any business enterprise in which he had a controlling interest.

After Daniels failed to appear in the malpractice action, a default judgment was entered against him in the amounts of $2,404,378.36 in favor of plaintiff K2 and $688,716.00 in favor of plaintiff ATAS. Daniels then assigned to plaintiffs all his claims against defendant, including bad faith claims.

Having disclaimed its duty to defend its insured in an action that culminated in a default judgment, defendant "cannot challenge the liability or damages determination underlying the judgment" (*Lang v Hanover Ins. Co.*, 3 NY3d 350, 356 [2004]). Nor can it raise defenses to plaintiffs' claim against Daniels (*Rucaj v Progressive Ins. Co.*, 19 AD3d 270, 273 [2005]). However, defendant is entitled, in the direct action against it, to raise defenses with respect to its obligations to cover the claims against Daniels, including the applicability of any asserted policy exclusions (*Lang* at 356).

"While the duty to defend is generally measured against the allegations of the pleadings in the underlying action, the duty to indemnify is distinctly different, for it is determined by the actual basis of the insured's liability to plaintiff" (*Robbins v Michigan Millers Mut. Ins. Co.*, 236 AD2d 769, 770 [1997]). Contrary to defendant's argument here, the exclusions did not apply with respect to either the duty to defend which was demonstrated based upon the allegations of legal malpractice or the duty to indemnify for a judgment based in legal malpractice. Thus, defendant cannot at this juncture assert defenses that would have defeated the legal malpractice claims (for example, that Daniels was not performing legal services for plaintiffs but was instead representing Goldan) or would have established the applicability of the exclusions, to the extent that the applicability of the exclusions is inconsistent with the judgment determining Daniels's liability to plaintiffs for legal malpractice (*see Lang*, 3 NY3d at 356; *compare Fisher v Hanover Ins. Co.*, 288 AD2d 806 [2001] [where default judgment was entered against insured, insurer's disclaimer based on policy's notice requirements was valid defense to action pursuant to Insurance Law § 3420 (b) (1)] *and Fusco v American Colonial Ins. Co.*, 221 AD2d 231 [1995]).

"To be relieved of its duty to defend on the basis of a policy

exclusion, the insurer bears the burden of demonstrating that the allegations of the complaint in the underlying claim cast the pleadings wholly within that exclusion, that the exclusion is not subject to any other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer might be eventually obligated to indemnify its insured" (*Utica First Ins. Co. v Star-Brite Painting & Paperhanging*, 36 AD3d 794, 796 [2007] [citations omitted]). No material issue of fact exists as to whether the allegations of plaintiffs' legal malpractice claims are based, even in part, upon Daniels's acts or omissions in his capacity as an officer, director, etc., of a business enterprise or any acts or omissions for a business enterprise in which he had a controlling interest, so as to bring them within either of the exclusions invoked by defendant (*id*). Rather, the allegations of legal malpractice were focused solely on Daniels's negligence as plaintiffs' counsel.

Although plaintiffs allege that Daniels was a member of Goldan, the basis of the legal malpractice action was that Daniels agreed to act as plaintiffs' attorney in the preparation of mortgages and related notes, in arranging for title insurance at Goldan's expense, and in recording the mortgage liens, that he failed to record the mortgages and obtain title insurance, and that his failure was a departure from good and accepted legal practice, and caused injury to plaintiffs. It was not alleged that Daniels was negligent in rendering legal services to his business enterprise, Goldan. The action was based exclusively on his obligation to plaintiffs, not to Goldan. With respect to defendant's duty to indemnify, Daniels's alleged controlling interest in Goldan did not affect his obligations to plaintiffs as their lawyer. His liability to plaintiffs is premised solely on the attorney-client relationship between him and plaintiffs, not on any interest that he had in Goldan.

Thus, the exclusions relied upon by defendant are patently inapplicable. That Daniels was an owner of Goldan or might have been acting in the interests of Goldan instead of those of his clients may explain why Daniels acted as he did, but it does not change the essence of the complaint, or the basis of liability, which is that Daniels committed legal malpractice in his representation of plaintiffs (*see American Guar. & Liab. Ins. Co. v Moskowitz*, 58 AD3d 426 [2009] [rejecting similar arguments advanced by defendant]). Daniels committed legal malpractice while he was an owner, officer, etc., of Goldan. However, the policy does not exclude coverage for *all conduct* occurring while he was an owner or officer but only for *claims* arising out of his capacity as such (*see RJC Realty Holding Corp. v Republic Franklin Ins. Co.*, 2 NY3d 158, 165 [2004]).

The dissent concludes that there is an issue of fact as to the actual basis of Daniels's liability to plaintiff, and thus as to the applicability of the exclusions, pointing to issues that can be raised by defendant outside the allegations of the complaint and the default judgment of legal malpractice, such as whether Daniels also represented Goldan. This interpretation of the policy exclusions is overly broad, as the exclusions are more reasonably understood to be "designed to exclude claims based upon legal work performed by an insured for an enterprise in which he or she has some kind of ownership interest and thus where the insured is likely to benefit directly from recovery under the policy" (*Oot v Home Ins. Co. of Ind.*, 244 AD2d 62, 70 [1998]; *see also Niagara Fire Ins. Co. v Pepicelli, Pepicelli, Watts & Youngs, P.C.*, 821 F2d 216, 220 [3d Cir 1987] ["The exclusions speak of excluded claims, and thus the character of the specific legal claims, rather than the malpractice suit's general factual background, must be analyzed to determine the exclusion issue. The claims made by (the legal malpractice claimant) deal only with negligence and breach of contract in the Law Firm's representation of (the legal malpractice claimant), and resolution of the claims will affect only the interests of (the legal malpractice claimant) and the Law Firm . . . Therefore, the malpractice claims are not omitted from coverage by the two exclusions . . . *designed to exclude business risk and collusive suits from coverage under the policy*" (emphasis added)]).[1] Because neither Daniels's actions in furtherance of Goldan's business nor his financial interest in Goldan are part of the legal malpractice claim made by plaintiffs for malpractice committed by Daniels, the legal malpractice claim is not excluded from coverage.

Contrary to the dissent's conclusion, the analysis in *Oot* (244 AD2d at 70) is applicable to this case. *Oot* points out that these types of exclusions are designed to apply to legal work performed by the insured for *his* enterprise. The allegations of the legal malpractice claim here simply do not include a claim that Daniels performed legal work for Goldan. The dissent's focus on the *discontinued* causes of action on the guarantees obscures the relevant analysis, which is whether the judgment, based solely on legal malpractice, was a judgment based on legal work performed for Goldan. Clearly, it was not.

This situation is to be contrasted with that in *American Guar.*

---

1. While the dissent notes that the *Niagara* analysis applied Pennsylvania law, the discussion of the purpose and applicability of these types of exclusions is apt and has general relevance. The dissent does not suggest that New York law is different in this regard. We disagree with the dissent's assessment that the exclusions in *Niagara* (for any claim arising out of any insured's activities as an officer, etc., of a company) are not as broad as the exclusions here.

& *Liab. Ins. Co. v Hoffmann* (61 AD3d 410 [2009]), relied upon by defendant, where the policy at issue excluded from coverage any claims based "in whole or in part." on acts "in connection with" a trust, and "each claim in the underlying proceeding centered on the transfer of stock held by a trust for the petitioners therein to a trust created by defendants of which they were the sole trustees and beneficiaries" (*id.* at 410 [internal quotation marks omitted]).

Finally, plaintiffs failed to establish a prima facie case of bad faith based upon defendant's "gross disregard" of the insured's interests under the policy (*see Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 453 [1993]), given Daniels's representation to defendant that, notwithstanding the allegations of the complaint concerning his legal representation of plaintiffs, his law firm rendered services to Goldan, and the overall questionable circumstances of the underlying transactions. Concur— Gonzalez, P.J., Acosta and Abdus-Salaam, JJ.

Tom and Andrias, JJ., dissent in part in a memorandum by Andrias, J., as follows: I agree with the majority that plaintiffs failed to establish a prima facie case of bad faith based upon defendant's alleged gross disregard of its insured's interests. However, I disagree with the majority's position that the policy exclusions relied on by defendant are "patently" inapplicable. Therefore, I dissent from the majority's affirmance of the judgment in plaintiffs' favor on the causes of action to enforce the default judgment in the underlying action, and would deny all parties summary judgment as to those claims.

Plaintiffs loaned $2,830,000 to Goldan, LLC, a real estate company owned by Jeffrey Daniels and Mark Goldman. Plaintiffs claim that Daniels, an attorney, agreed to represent them in the transactions and that he failed to record mortgages securing the loans or obtain title insurance.

Daniels had a lawyers' professional liability policy with defendant American Guarantee and Liability Insurance Co. (American) that extended indemnity coverage, subject to the policy terms, for amounts Daniels became legally obligated to pay as damages because of a claim based on an act or omission in his rendering or failing to render legal services for others. The relevant policy exclusions provide: "This policy shall not apply to any Claim based upon or arising out of, in whole or in part: . . . D. the **Insured's** capacity or status as: 1. an officer, director, partner, . . . shareholder, manager or employee of a business enterprise . . . [Insured's Status Exclusion]. E. the alleged acts or omissions by any **Insured**, with or without compensation, for any business enterprise, whether for profit or not-for

profit, in which any **Insured** has a **Controlling Interest** [Business Enterprise Exclusion]."

On December 2, 2008, Daniels placed American on notice of plaintiffs' potential claim, stating:

"I have become aware of circumstances that would lead me to believe that a claim may be asserted against my law firm as a result of legal services that I have rendered to a real estate development company, Goldan, LLC. Goldan is [a] company that is owned by myself and an individual named Mark Goldman. My law firm provided legal services to Goldan on a retainer basis.

"[Claimants] have indicated that they believed I was representing their interests in ensuring that the funds in excess of several million dollars that were lent to Goldan over several transactions were secured by filed mortgages against real property. I do not have personal knowledge of these mortgages which, I believe, were negotiated directly with Mark Goldman. However, it appears that these mortgages may not have been recorded."

On or about December 31, 2008, American reserved its rights to deny coverage on various grounds, including the Insured's Status Exclusion and Business Enterprise Exclusion. On or about January 16, 2009, plaintiffs sued Daniels, Goldman and Goldan. In the first and second causes of action, plaintiffs asserted that Daniels's failure to record the mortgages or obtain title insurance was a departure from good and accepted legal practice and deprived plaintiffs of a secured interest in the properties. In the fifth and sixth cause of actions, they alleged that Daniels breached his personal guarantees of the loans.

American allegedly retained counsel to represent Daniels, who received extensions of time to answer. By letter dated March 9, 2009, American informed Daniels that it was ceasing to pay for his defense and was disclaiming coverage on various grounds, including that the action fell outside the policy insuring clause because it was based on self dealing; was excluded from coverage under the Insured's Status Exclusion and Business Enterprise Exclusion; and sought restitution of loan principal and interest owed by Goldan and Daniels (as guarantor), not "damages" as defined by the policy. American also reserved its rights under other policy provisions, as well as generally.

On June 8, 2009, plaintiffs wrote to Daniels demanding $450,000 "in full resolution of the claims asserted in [the underlying] action." Daniels forwarded the letter to American, which, by letter dated July 8, 2009, reiterated its disclaimer and rejected the settlement offer.

On October 2, 2009, a default judgment was entered against

Daniels that held him liable to plaintiff K2 for $2,404,378.36 and plaintiff ATAS for $688,716. Upon plaintiffs' application, the personal guarantee claims were discontinued without prejudice. American states that it was not notified of the application for the default judgment or of the discontinuance.

On or about December 14, 2009, Daniels assigned his claims against American to plaintiffs, which commenced this action. In the first and second causes of action, plaintiffs seek to recover the amount of the default judgment, up to the policy limits. In the third and fourth causes of action, plaintiffs assert that American breached the implied covenant of good faith and fair dealing, and seek to recover the full amount of the judgment.[1]

Pursuant to Insurance Law § 3420 (b), an injured party can recover against the carrier to the same extent that the insured would be entitled to recover under the terms of the policy. A default judgment entered against an insured in an underlying suit is binding on the carrier, which cannot contest the merits of the plaintiff's claim in a subsequent suit under section 3420 (*see Robbins v Michigan Millers Mut. Ins. Co.*, 236 AD2d 769, 771 [1997]; *Matychak v Security Mut. Ins. Co.*, 181 AD2d 957 [1992], *lv denied* 80 NY2d 758 [1992]). However, the carrier may contest the scope of coverage under the policy and is entitled to raise defenses with respect to the applicability of the insuring and exclusionary provisions (*see Lang v Hanover Ins. Co.*, 3 NY3d 350, 356 [2004]; *Fisher v Hanover Ins. Co.*, 288 AD2d 806 [2001]; *Fusco v American Colonial Ins. Co.*, 221 AD2d 231 [1995]; *see also Cirone v Tower Ins. Co. of N.Y.*, 76 AD3d 883, 884 [2010], *lv denied* 16 NY3d 708 [2011] ["As Navana's assignees, plaintiffs are now suing upon a claim which is subject to the same defenses Tower could have asserted against Navana"]).

In contrast to the duty to defend, the duty to pay is determined "by the actual basis for the insured's liability to a third person" (*Servidone Constr. Corp. v Security Ins. Co. of Hartford*, 64 NY2d 419, 424 [1985]). "[T]he breach by [a] defendant of its duty to defend does not create coverage, and [a] 'defendant is not precluded from demonstrating that the actual basis of the insured's liability to plaintiff[s] is such that the loss falls entirely within the policy exclusion' " (*Matijiw v New York Cent. Mut. Fire Ins. Co.*, 292 AD2d 865, 865 [2002], quoting *Robbins v*

---

1. The complaint alleges that on or about February 18, 2009, an involuntary petition for relief was filed under chapter 7 of the United States Bankruptcy Code (11 USC § 101 *et seq.*), naming Goldan as debtor, and that on or about April 3, 2009, a default judgment was entered in the underlying action against Goldman in the amount of $2,945,474.35.

*Michigan Millers Mut. Ins. Co.*, 236 AD2d 769, 771 [1997], *supra*). Thus, even if American were found to have breached a duty to defend, it would not be required to indemnify Daniels, and in turn plaintiffs, for a judgment for a loss that is excluded by the policy.

Although the default judgment in the underlying action established Daniels's liability to plaintiffs, it did not establish American's. American's liability to plaintiff, as an indemnitor, depends on facts outside of the default judgment (*see Holmes v Allstate Ins. Co.*, 33 AD2d 96, 97-98 [1969]). Even if the default judgment mandates a finding that Daniels is liable to plaintiffs, it does not foreclose a finding that Daniels represented both Goldan and plaintiffs in connection with the mortgage transactions and that his conduct falls within the ambit of either the Insured's Status Exclusion or the Business Enterprise Exclusion, or both, because his failure to record the mortgages and obtain title insurance was a business decision to benefit his company, Goldan.

The majority finds that the Insured's Status Exclusion and Business Enterprise Exclusion do not apply because plaintiff's underlying malpractice claims were "based on" Daniels's status as plaintiffs' attorney, and not, even in part, on his performance of services for, or his status as an owner of, Goldan. This interpretation of the exclusions is too narrow.

The policy language is broad, expressly stating that the policy "shall not apply to any Claim based upon *or arising out of, in whole or in part* etc." (emphasis added) the insured's capacity or status as an officer or director of a business enterprise or from the alleged acts or omissions of the insured for any business enterprise in which he has a controlling interest. While plaintiffs allege in the underlying complaint that Daniels represented them, in his notice of the potential claim, Daniels advised American that to the extent he rendered legal services at all, those services were rendered to his own company, Goldan. Further, the complaint states that Daniels was a principal of Goldan, and American contends that Daniels engaged in self-dealing by representing one, if not both, of the parties to the loan transaction and also acting as the principal of the business enterprise receiving the loans. Thus, even if plaintiffs' allegations of malpractice triggered the policy's insuring clause, an issue of material fact remains as to whether plaintiffs' legal malpractice claims, at least in part, are based upon or arose out of Daniels's capacity or status as an officer, director, shareholder or employee of Goldan, or out of his alleged acts or omissions on behalf of Goldan, a business enterprise in which he had a con-

trolling interest (*see Denihan Ownership Co., LLC v Commerce & Indus. Ins. Co.*, 37 AD3d 314, 315 [2007] ["Words like 'arising from,' when used in exclusion clauses, are generally taken as a broad and comprehensive reference to events originating from, incident to, or having connection with the subject of the exclusion"]).

The majority contends that this interpretation of the policy exclusions is overbroad, "as the exclusions are more reasonably understood to be 'designed to exclude claims based upon legal work performed by an insured for an enterprise in which he or she has some kind of ownership interest and thus where the insured is likely to benefit directly from recovery under the policy' (*Oot v Home Ins. Co. of Ind.*, 244 AD2d 62, 70 [1998])." However, *Oot* is distinguishable on its facts.

In *Oot*, Olde Mill sued Earl Oot, Thomas Oot, and the Oot Law Offices, alleging that Earl had performed legal services for it with respect to the refinancing of a note and mortgage held by Earl and others as mortgagees, without disclosing his conflict of interest and in breach of his fiduciary duty. The Fourth Department held that coverage for the underlying claims against Thomas was not excluded by a policy provision excluding claims based on work with respect to any business venture in which the insured had a pecuniary or beneficial interest. However, in so ruling, the court, noting that the carrier had made "that argument despite its failure to cross-appeal from that part of the judgment in favor of Earl, which implicitly finds that the claim was covered under the policy" (244 AD2d at 69-70), found the clause inapplicable because "[t]he underlying action arises out of work performed by Earl for Olde Mill; Thomas did not participate, and his liability arises solely by virtue of his partnership with Earl" (*id.* at 70). The court further held that "the exclusion applies only to a 'pecuniary or beneficial' interest that the insured 'has' at the time the claim is made for which the insured seeks coverage" and that "[b]ecause Earl was no longer a mortgagee at the time the claim was made, no such benefit exists" (*id.*).

Here, in contrast, plaintiffs allege that it was Daniels who committed the malpractice, which arises out of loan transactions between plaintiffs and Goldan, an entity in which Daniels held a pecuniary interest at the time of the claim and whose obligations he personally guaranteed. Further, Daniels advised American that he represented Goldan, and he will receive a direct benefit if American pays the judgment because that will relieve him of personal liability under his guarantees of Goldan's obligations, a claim that was included in the underlying action but discontinued without prejudice.

Nor does *Niagara Fire Ins. Co. v Pepicelli, Pepicelli, Watts & Youngs, P.C.* (821 F2d 216 [3d Cir 1987]), cited by the majority, mandate a different result. In *Niagara,* the exclusions at issue were not as broad as those at issue in this case, which apply to claims "based upon or arising out of, in whole or in part," the insured's capacity or status as an officer, director, partner, etc., or his acts or omissions for a business enterprise he controls. Further, in *Niagara* the alleged malpractice did not simultaneously involve business decisions by Pepicelli, whereas here a question exists as to whether Daniels's failure to record the mortgage was, in whole or in part, a business decision to benefit his company, Goldan (*see Darwin Natl. Assur. Co. v Hellyer,* 2011 WL 2259801, 2011 US Dist LEXIS 60592 [ND Ill 2011]).

In *Darwin,* the claimants sold land to Harmony Stone LLC for $1.9 million, secured by a $1,362,500 mortgage, which Harmony's principals, attorney Hellyer and his partner, guaranteed. Harmony also obtained a $600,000 mortgage from American Community Bank & Trust (Community). Subsequently, Hellyer entered into an agreement with Community to increase Harmony's loan from $600,000 to $1,225,000. As a condition thereof, Community required Harmony to obtain a subordination of mortgage agreement from the claimants. The claimants later sued Hellyer alleging that he acted as their counsel with respect to the loan subordination and committed professional negligence by failing to properly advise them. The claimants also sought to recover the full amount owed on their loan from Harmony or from Hellyer and his partner on their personal guaranty. In holding that the Business Enterprise Exclusion applied, the court explained that "it is reasonable to conclude that these allegations of failing to properly advise his clients are, at a minimum, either indirectly resulting from or in consequence of Hellyer's business interest in Harmony Stone. As another court recently explained, business enterprise exclusions are frequently included in policies because '[i]nsurers calculate liability insurance rates on the assumption that insured attorneys act solely in a legal capacity, and that their professional judgment is unaffected by personal interests. Business enterprise exclusions diminish risk associated with an insured's decision to pursue business opportunities that may result in conflicts between the lawyers' best interests and those of his client.' *Minn. Lawyers Mut. Ins. Co. v Antonelli, Terry, Stout & Kraus, LLP,* No. 1:08-CV-1020, 2010 WL 4853300, at *10 (ED Va Nov. 18, 2010) (citation omitted). Here, the claim of malpractice is based on the fact that Hellyer had a personal financial stake in his business venture, and this is precisely the increased risk that plaintiff has excluded from its coverage with

the Business Enterprise Exclusion" (2011 WL 225980, \*5, 2011 US Dist LEXIS 60592, \*15-16).

This view is consistent with New York law recognizing that "[a]n errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business," and is not so comprehensive as "to protect against all business vicissitudes" (*Albert J. Schiff Assoc. v Flack*, 51 NY2d 692, 700 [1980]). "To hold otherwise, on a fair reading of the policies, would be to create additional coverage beyond that which was bought and paid for" (*id.*; *see also Société Générale v Certain Underwriters at Lloyd's, London*, 1 AD3d 164 [2003]; *Tartaglia v Home Ins. Co.*, 240 AD2d 396 [1997]).

In this regard, the duty of good faith and fair dealing implied in every contract is an integral part of an insurance contract (*see New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318 [1995]; *Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 452 [1993]), and New York's public policy prohibits indemnification for intentionally caused injuries (*see Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392, 399 [1981]). American should be allowed discovery to determine if Daniels intentionally failed to record the mortgages. To hold otherwise and allow the insured to shift liability to the insurer would allow the wrongdoer to evade responsibility for his actions.

Accordingly, as issues of fact exist as to whether the Insured's Status Exclusion or the Business Enterprise Exclusion applies, plaintiffs should not have been granted summary judgment on their first and second causes of actions seeking to enforce the default judgment in the underlying action, and that portion of the judgment should be vacated.