[7 NYS3d 80]

LEE & AMTZIS, LLP, et al., Respondents, v AMERICAN GUARAN-
TEE AND LIABILITY INSURANCE COMPANY, Appellant, et al.,
Defendant.

First Department, April 7, 2015

**APPEARANCES OF COUNSEL**

*Coughlin Duffy LLP*, New York City (*Adam M. Smith* and *Steven D. Cantarutti* of counsel), for appellant.

*Schwartz & Ponterio, PLLC*, New York City (*Matthew F. Schwartz* of counsel), for respondents.

**OPINION OF THE COURT**

GISCHE, J.

This declaratory judgment action involves the issue of whether certain transactions among the plaintiffs and nominal defendant Jane Kurtin fall within the "insured's status" and "business enterprise" exclusions to coverage in plaintiff lawyers' professional liability insurance policy (policy) issued by defendant American Guarantee and Liability Insurance Company (AGLIC). Broadly stated, these exclusions apply where a lawyer is sued for malpractice and the claim also arises in whole or in part from the lawyer's status as the manager of a business enterprise in which the lawyer has a controlling interest.

Kurtin was a client of plaintiff Lee & Amtzis, LLP (law firm). She commenced an action in the Superior Court of New Jersey against the law firm, both partners individually, and Astoria Station, LLP (*Kurtin v Lee*, Super Ct, Somerset County, docket No. SOM-L-1098-10) (New Jersey action). In the New Jersey action, Kurtin asserted claims for breach of contract, nonpayment of two promissory notes which she held and were made, respectively, in 2006 and 2010, and unjust enrichment based upon the nonpayment of those notes. Kurtin also asserted claims for legal malpractice/negligence against the law firm and each of its named partners. In connection with her malpractice/negligence claims, Kurtin alleged that when she entered into these loans, Lee was not only the "managing member" of Astoria Station, he was also a practicing attorney and partner of the law firm, which had the same address as Astoria Station. Kurtin claimed that the attorneys had induced her to proceed with certain financial transactions in which they had a financial interest; they failed to recommend that she obtain independent legal counsel; they had allowed their legal services to her to be influenced by their own business ventures outside the practice of law; and the attorneys knew their interests and Kurtin's interests were adverse.

Following motion practice in the New Jersey action, Kurtin prevailed on her promissory note claims, and in its decision dated and filed October 27, 2011, the court directed entry of a money judgment against Astoria Station and Lee in the amount of $1,332,739.25 on the 2006 note and a money judgment against Lee in the amount of $125,043.65 on the 2010 note (*Kurtin v Lee*, Super Ct, Somerset County, Oct. 23, 2011, Coyle, Jr., J.). Lee had signed the 2006 note on behalf of Astoria Sta-

tion and also personally guaranteed its payment. In relevant part, the 2006 note states that it is a "replacement of all prior debts due to Jane Kurtin, together with accrued interest, from Leewood-Edgemere, LLC,[1] R. Randy Lee and related entities, all of which are considered to be paid in full." The 2006 note also refers to a condominium project underway "at the Astoria Station project in Queens," stating that "pay down will be TWENTY FIVE THOUSAND DOLLARS ($25,000.00) at each unit closing." The 2010 note represents a loan made by Kurtin to Lee personally.

The law firm and partners moved to dismiss the remaining malpractice/negligence claims in the New Jersey action, but that motion was denied. Subsequently the parties in the New Jersey action stipulated to stay the malpractice/negligence claims pending resolution of this declaratory judgment action.

In this action, plaintiffs seek a declaration that AGLIC has a contractual duty to defend them against the malpractice/negligence claims asserted by Kurtin in the New Jersey action. Plaintiffs were successful in their motion for summary judgment before Supreme Court, largely due to the motion court's reliance on a prior decision by this Court in *K2 Inv. Group, LLC v American Guar. & Liab. Ins. Co.* (91 AD3d 401 [1st Dept 2012]), which construed the identical policy language at issue here. Our decision, however, has since been reversed by the Court of Appeals[2] (*K2 Inv. Group, LLC v American Guar. & Liab. Ins. Co.*, 22 NY3d 578 [2014]) (*K2*). The Court of Appeals' decision in *K2* likewise requires a reversal of the motion court's order and judgment (one paper) in plaintiffs' favor and a judgment in favor of AGLIC, declaring that it does not have a duty to defend plaintiffs in the New Jersey action.

Section I (B) of the policy (Defense and Investigation), provides that AGLIC has a "duty to defend any Claim based on an act or omission in the Insured's rendering or failing to render Legal Services for others, seeking Damages that are covered by this policy . . . even if any of the allegations of the Claim are groundless, false or fraudulent" (boldface omitted). The policy defines "Legal Services" as "those services performed

---

**1.** This is another real estate concern that Lee is apparently affiliated with.

**2.** *K2 Inv. Group, LLC v American Guar. & Liab. Ins. Co.* (21 NY3d 384 [2013]) (*K2-1*) affirmed *K2 Inv. Group, LLC v American Guar. & Liab. Ins. Co.* (91 AD3d 401 [1st Dept 2012]). *K2-1* was, however, vacated by *K2* following reargument (21 NY3d 1049 [2013]).

by an Insured as a licensed lawyer in good standing . . . but only where the act or omission was in the rendition of services ordinarily performed as a lawyer" (boldface omitted).

Section III of the policy (Exclusions) provides as follows:

> "This policy shall not apply to any Claim based upon or arising out of, in whole or in part: . . .
>
> "D.[3] the Insured's capacity or status as:
>
> "1. an officer, director, partner, trustee, shareholder, manager or employee of a business enterprise . . .
>
> "E.[4] the alleged acts or omissions by any Insured, with or without compensation, for any business enterprise . . . in which any Insured has a Controlling Interest" (boldface omitted).

In interpreting this identical policy language, the Court of Appeals found that these exclusions would apply to hybrid malpractice claims that arise partly out of an attorney's law practice and partly out of a business enterprise in which the attorney has a controlling interest (22 NY3d at 587-588). In *K2*, the attorney was sued for legal malpractice and AGLIC refused to provide him with a defense (*id.* at 584). After the clients in the malpractice action obtained a default judgment, the attorney assigned his claim against AGLIC to the clients. The claimed malpractice in *K2* was that Daniels, an attorney, failed to record mortgages he prepared on behalf of his clients, who were the lenders (*id.* at 587). Daniels was also a principal in Goldan, the entity that had borrowed the funds. In the declaratory judgment action at issue in *K2*, the motion court granted summary judgment to the clients, who stood in the shoes of Daniels, the insured. That decision was affirmed by this Court on appeal (91 AD3d 401). In *K2*, however, this Court's decision was reversed. In reversing, but denying AGLIC summary judgment, the Court of Appeals found there were issues of fact about whether the policy exclusions precluded coverage, given the undeveloped record before it:

> "The Appellate Division majority's rationale for granting summary judgment was, essentially, that

---

**3.** Section III (D) of the policy is hereinafter referred to as the insured status exclusion.

**4.** Section III (E) of the policy is hereinafter referred to as the business enterprise exclusion.

a case arising out of the alleged attorney-client relationship between plaintiffs and Daniels could not also arise out of Daniels's managerial status with, or acts or omissions for, Goldan. But the claims could arise out of both. Because the malpractice case was resolved on default, the record tells us little about the substance of the claims; it is at least possible, however, that the alleged malpractice occurred because Daniels was serving two masters— plaintiffs, his clients, and Goldan, the company of which he was a principal. If that is the case, it can fairly be said that the malpractice claims arose partly out of Daniels's law practice and partly out of his status with or activity for Goldan—precisely the situation that the insured's status and business enterprise exclusions seem to contemplate" (*K2*, 22 NY3d at 587-588).

Here, we have a well developed record showing that plaintiffs' activities on Kurtin's behalf are of a hybrid nature and, therefore, excluded from coverage. It is undisputed that plaintiffs prepared the legal documents necessary to effectuate the loans, including the promissory notes. It is also undisputed that Lee was the managing member of Astoria Station and the obligor on the 2006 note which Lee also personally guaranteed. Lee, personally, was the borrower on the 2010 note. The proceeds from these financial transactions were used in connection with Astoria Station's real estate development projects, indirectly which benefitted Lee, the managing member of that enterprise. Kurtin prevailed in the New Jersey action and obtained a money judgment for the nonpayment of the promissory notes. Her remaining claims of legal malpractice and negligence do not seek damages that are any different than the relief she already obtained in the New Jersey action. Applying New York law, as the New Jersey court has already found applies, Kurtin's allegations, that she was not advised to get her own attorney, or that she should have had certain investment properties independently appraised, are generic claims that are insufficient to sustain a claim for legal malpractice (*Schwartz v Olshan Grundman Frome & Rosenzweig*, 302 AD2d 193 [1st Dept 2003]). Kurtin has not alleged any losses, other than the nonpayment of the notes, and those notes have now been reduced to judgments in her favor.

    ▪ Lee was simultaneously serving two masters, Kurtin, his client, and a company of which he was a principal. This is

precisely the situation that the policy's insured status and business enterprise exclusions exclude from coverage. Since Kurtin's claims partly arise from the legal services the attorneys provided her with, but also from Lee's status or activity for his company, Astoria Station, they are of a hybrid nature, and are not covered, meaning that AGLIC has no duty to defend plaintiffs in the New Jersey action.

This result obtains notwithstanding that the issue in this case is whether AGLIC has a duty to defend plaintiffs, not whether it must indemnify its insured, as was the issue in *K2*. Although the duty to defend is broader than the duty to indemnify, where the facts alleged plainly do not bring the underlying claim within the coverage of the policy, there is no obligation to defend (*see American Guar. & Liab. Ins. Co. v Hoffmann*, 61 AD3d 410 [1st Dept 2009]).

■ Arguments by Amtzis and the law firm, that the exclusions to coverage do not apply to him or the firm because neither he nor the law firm had any interest in Astoria Station, focus solely on the insured status exclusion (section III [D]) and ignore the business enterprise exclusion (section III [E]) which excludes from coverage "the alleged acts or omissions by any Insured, with or without compensation, for any business enterprise . . . in which any Insured has a Controlling Interest" (boldface omitted). Since Lee was a partner in the law firm, by assuming dual roles of providing legal advice to a client, while simultaneously pursuing his own business interests, Lee placed himself, his law partner and the law firm firmly within the exclusions in the professional policy plaintiffs seek protection under. Consequently, under the business enterprise exclusion, it is immaterial that Amtzis did not have an interest in Astoria Station; AGLIC still has no duty to provide him with a defense in the New Jersey action.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Ellen M. Coin, J.), entered January 8, 2013, which granted plaintiffs' motion for summary judgment to the extent of declaring that AGLIC is obligated to defend plaintiffs (its insureds) in an underlying action pending in New Jersey, and denied AGLIC's cross motion for summary judgment, without prejudice to renewal, should be reversed, on the law, without costs, plaintiffs' motion denied, the declaration in favor of plaintiffs vacated, and summary judgment granted to AGLIC the extent of declaring that it is not obligated to defend plaintiffs in the underlying New Jersey action.

SWEENY, J.P., DEGRASSE, MANZANET-DANIELS and FEINMAN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered January 8, 2013, reversed, on the law, without costs, plaintiffs' motion denied, the declaration in favor of plaintiffs vacated, and summary judgment granted to defendant American Guarantee and Liability Insurance company (AGLIC) to the extent of declaring that AGLIC is not obligated to defend plaintiffs in the underlying New Jersey action.